Michael **SCHNEIDER**; Roisin Schneider, individually and as guardians of Slaine Schneider, Plaintiffs–Appellants,

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 93–1702.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1993.

Decided June 24, 1994.

■

---

Martha L. Neese, St. Paul, MN, argued, for appellant.

Patricia A. Millett of the Dept. of Justice, Washington, DC, argued, for appellee.

Before LOKEN, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

HANSEN, Circuit Judge.

Michael and Roisin Schneider brought an action on behalf of their 5½ year old daughter, Slaine Schneider, in the district court seeking review of a decision by the United States Air Force denying their claim for payment under the Military Claims Act (the Act). *See* 10 U.S.C. § 2731–2737. The dis-

trict court [1] dismissed the Schneiders' cause of action for lack of subject matter jurisdiction, finding that the language of the Act precludes judicial review. The Schneiders appeal, asking this court to determine that the Military Claims Act does not preclude judicial review of the denial of their claim and separately asserting that the procedure used by the United States Air Force in reviewing their claim violated their constitutionally protected rights to equal protection and due process. We affirm.

## I. BACKGROUND

Slaine Schneider was born on April 23, 1987. In late 1988, while living in England with her parents where her father, Michael Schneider, was stationed with the United States Air Force (USAF), Slaine started to experience right ear drainage. Her parents took her to a hospital in England for treatment. In 1989, a USAF physician, Dr. David Range, performed three surgical procedures on Slaine's ear: (1) a myringotomy, which involved placing a tube in Slaine's right ear to facilitate drainage; (2) removal of a polyp from the right ear; and (3) a modified radical mastoidectomy, diagnosed postoperatively as cholesteatoma. The Schneiders contend that before Dr. Range performed the third surgery, he advised the Schneiders that he had never seen or performed the procedure but assured them that he would have available a more experienced physician at the time of surgery. The Schneiders assert that to the contrary, a more experienced physician was not present at the time of surgery. In 1990, Dr. William S. Lund, a civilian doctor in England, performed a fourth surgery for recurrent cholesteatoma, and his operative report indicated that much of the ear drum was eroded. Today, Slaine suffers deafness in her right ear, which her parents claim results from the negligence of the USAF physician's failure to diagnose the cholesteatoma sooner and failure to properly treat the ear drainage.

On Slaine's behalf, in July of 1991, her parents filed a claim with the USAF pursuant to the Military Claims Act, alleging personal injury to Slaine as a result of the negligence of the USAF physician. On November 13, 1991, Captain Tamara Riley, a USAF Judge Advocate officer stationed in Europe and assigned to do a "medicolegal review" of the claim, notified the Schneiders of how the claim process could be expected to proceed. In the letter, Captain Riley said that she would review the case within 45 days, consult with medical experts, and then forward the file to the Air Force's legal services agency at Bolling Air Force Base in Washington, D.C., for final disposition, and notify the Schneiders when the transfer occurred. Captain Riley also informed the Schneiders that they bore the burden of proof and requested that the Schneiders obtain a current audiology examination of Slaine in order to substantiate their claim for total and permanent loss of hearing. (Jt.App. at 24.) On January 13, 1992, Captain Riley notified the Schneiders that she had completed her "medicolegal review" and was forwarding the file to Washington, D.C., for final disposition. She again suggested that the Schneiders forward the audiology report as soon as possible to the reviewing officer in Washington. (*Id.* at 26.) By letter dated March 16, 1992, the Schneiders' attorney submitted the audiology report to the reviewing authority in Washington and asked what information was needed to complete the investigation. (*Id.* at 27.) By letter dated the next day, the USAF notified the Schneiders of the final disposition of their claim. (*Id.* at 28–29.) The USAF denied the claim, finding no negligence in the care Slaine received from Dr. Range. (*Id.*)

The Schneiders filed an administrative appeal pursuant to the regulations, requesting that the USAF reconsider their claim. On appeal, the Schneiders, for the first time, submitted the written opinion of their expert, Dr. George Sisson, Sr., who concluded that Slaine had received negligent care from the USAF physician. (*Id.* at 30–44.) Dr. Sisson's opinion referred to Dr. William S. Lund, the physician who had subsequently treated Slaine, as a well-known British neu-

---

1. The Honorable Diana E. Murphy, Chief Judge, United States District Court for the District of Minnesota.

rotologist and cited Dr. Lund's findings as a basis for Dr. Sisson's opinion. (*Id.* at 42–43.) Colonel Philip A. Meek, Chief of the Air Force's Claims Division, considered the Schneiders' appeal and Dr. Sisson's expert report. Noting that the Schneiders' expert quoted Dr. Lund, Colonel Meek, in his letter of denial, stated that the Air Force had extensively interviewed Dr. Lund in the course of investigating the claim. Captain Riley had previously informed the Schneiders that as a part of her investigation of the claim she would consult with experts. In the USAF interview, Dr. Lund concluded that Dr. Range's treatment was not negligent and that Slaine's present condition was a result of the disease process, not medical negligence. (*Id.* at 45.) The medical facts of the case were also reviewed by a USAF medical expert who concluded that the diagnosis was timely and the surgery was appropriate. (*Id.* at 46.) Colonel Meek concluded that he was unable to approve the claim for payment because there was no showing of negligent treatment. (*Id.*)

The Schneiders then filed an action in district court seeking review of the USAF's decision. They alleged jurisdiction as a federal question under 28 U.S.C. § 1331 and the Military Claims Act, 10 U.S.C. § 2731–2737; as a tort claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680; as a controversy under the Declaratory Judgment Act, 28 U.S.C. § 2201; and as a constitutional claim of due process and equal protection under the Fifth Amendment. The district court found that there was no jurisdiction under the FTCA because the United States has not waived its sovereign immunity for claims arising in a foreign country. *See* 28 U.S.C. § 2680(k). The district court determined that there was no jurisdiction under the Declaratory Judgment Act because it only creates a remedy and cannot serve as an independent basis for subject matter jurisdiction. *See* 28 U.S.C. § 2201. The district court also determined that there was no federal question under 28 U.S.C. § 1331 because the denial of a settlement is unreviewable by the terms of the Military Claims Act, *see* 10 U.S.C. § 2735, and the Schneiders had not raised any valid constitutional claim. Accordingly, the district court dismissed the

action for lack of jurisdiction and failure to state a claim upon which relief may be granted. The Schneiders appeal.

## II. DISCUSSION

In general, the Military Claims Act allows for settlement of two types of personal injury claims:

> (a) claims arising from negligent or wrongful acts or omissions committed by United States military or civilian personnel while acting within the scope of their employment.

> (b) claims arising from noncombat activities of the United States, whether or not such injuries or damages arose out of the negligent or wrongful acts or omissions by United States military or civilian employees ...

32 C.F.R. § 842.49(a), (b) (1990); *see also* 10 U.S.C. § 2733(a). For claims arising from noncombat activities, it is not necessary to establish negligence. *See* 32 C.F.R. § 842.-49(b). "Noncombat activity" is a specially defined term in the department's regulations; it is an "[a]ctivity, other than combat, war or armed conflict, that is particularly military in character and has little parallel in the civilian community." 32 C.F.R. § 842.41(c) (1990). For claims arising from an act of an employee acting within the scope of his employment, however, the claimant must show negligence or a wrongful act. *See* 32 C.F.R. § 842.49(a). When the Secretary is satisfied that a claim of negligence has been substantiated, the Secretary "may settle" the claim by paying an amount not to exceed $100,000, and for a larger claim deemed meritorious by the Secretary, the Secretary may report the excess amount to the Comptroller General for payment. *See* 10 U.S.C. § 2733.

The Schneiders' claim arose from the acts of a USAF employee (Dr. Range) acting within the scope of his employment. The USAF denied the claim, finding no negligence, and the district court dismissed their complaint for lack of jurisdiction and failure to state a claim. On appeal, the Schneiders offer two arguments to support their contention that the district court has jurisdiction to consider their complaint. First, the Schneid-

ers contend that the Military Claims Act does not preclude judicial review of the USAF's denial of their claim. Second, they contend that the USAF violated their rights to equal protection and due process. We consider each argument in turn.

## A. Military Claims Act

■ The Schneiders argue that the district court erred in determining that it lacked jurisdiction because the USAF's decision to deny their claim is a federal question under the Military Claims Act and is subject to judicial review as final agency action. This court reviews de novo a district court's determination that it lacks subject matter jurisdiction. *See General Elec. Capital Corp.*, 991 F.2d 1376, 1380 (8th Cir.1993); *Keene Corp. v. Cass*, 908 F.2d 293, 296 (8th Cir.1990).

■ The settlement of a claim under the Military Claims Act, which includes the Military's disposing of a claim by disallowance, *see* 10 U.S.C. § 2731, is final agency action. Ordinarily, the Administrative Procedure Act (APA) provides a general cause of action for persons adversely aggrieved by final agency action, *see* 5 U.S.C. § 702, but there is no cause of action to the extent that a relevant statute precludes judicial review, *see* 5 U.S.C. § 701(a)(1). *See Block v. Community Nutrition Inst.*, 467 U.S. 340, 345, 104 S.Ct. 2450, 2453, 81 L.Ed.2d 270 (1984). To determine whether the relevant statute precludes judicial review:

> We begin with the strong presumption that Congress intends judicial review of administrative action. . . .
>
> . . . .
>
> Subject to constitutional constraints, Congress can, of course, make exceptions to the historic practice whereby courts review agency action. The presumption of judicial review is, after all, a presumption, and "like all presumptions used in interpreting statutes, may be overcome by," *inter alia*, "specific language or specific legislative history that is a reliable indicator of congressional intent," or a specific congressional intent to preclude judicial review that is " 'fairly discernible' in the detail of the legislative scheme."

*Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670–73, 106 S.Ct. 2133, 2135–37, 90 L.Ed.2d 623 (1986) (quoting *Block*, 467 U.S. at 349, 351, 104 S.Ct. at 2456, 2457). To preclude judicial review, a statute must be " 'specific in withholding such review [or] must upon its face give clear and convincing evidence of an intent to withhold it.' " *Bowen*, 476 U.S. at 671, 106 S.Ct. at 2136 (quoting H.R.Rep. No.1980, 79th Cong., 2d Sess. 41 (1946)); *see also Abbott Labs. v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967).

■ The relevant section of the Military Claims Act provides: "Notwithstanding any other provision of law, the settlement of a claim under section 2733 . . . of this title is final and conclusive." 10 U.S.C. § 2735. The Schneiders argue that this statutory language does not clearly preclude the presumption in favor of judicial review but merely provides that no further agency action or review is available. To the contrary, section 2735 is clear on its face. The statute does not merely say that the agency decision is "final," *see Shaughnessy v. Pedreiro*, 349 U.S. 48, 51–52, 75 S.Ct. 591, 594, 99 L.Ed. 868 (1955) ("final" only prevents further administrative review), or "final and conclusive," *see Lindahl v. Office of Personnel Mgmt.*, 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985) ("final and conclusive" precludes judicial review only of agency fact-finding). Rather, the statute states that the Secretary's decision is "final and conclusive" "notwithstanding any other provision of law." 10 U.S.C. § 2735. To interpret the section as precluding only further administrative review would be to render meaningless the phrase "notwithstanding any other provision of law." Additionally, section 2735 originally stated that the military's settlement of a claim is "final and conclusive for all purposes," but the words "for all purposes" were subsequently "omitted as surplusage." *Rodrigue v. United States*, 968 F.2d 1430, 1433 (1st Cir.1992) (quoting 10 U.S.C.A. § 2735 (Explanatory Notes)). We conclude that the language of section 2735 clearly expresses Congress's intent to preclude judicial review and presents no ambiguity that would give rise to a presumption in favor of judicial review.

Among other circuits, "[i]t is well-recognized that the administrative claims procedure is an appropriate balance between individual rights and Congress' desire to avoid the disruptive effect that judicial review may have on 'the prompt and authoritative administrative settlement of claims' against the military." *Heller v. United States,* 776 F.2d 92, 98 (3d Cir.1985) (quoting *Towry v. United States,* 459 F.Supp. 101, 108 (E.D.La.1978), *aff'd,* 620 F.2d 568 (5th Cir.1980), *cert. denied,* 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981)), *cert. denied,* 476 U.S. 1105, 106 S.Ct. 1948, 90 L.Ed.2d 358 (1986). Every circuit that has addressed the language of section 2735 has concluded that it precludes judicial review of the military's disallowance of a claim under the Act, absent a constitutional claim. *See Hata v. United States,* 23 F.3d 230, 232 (9th Cir.1994); *Rodrigue,* 968 F.2d at 1432–34; *Poindexter v. United States,* 777 F.2d 231, 233–37 (5th Cir.1985); *Broadnax v. United States Army,* 710 F.2d 865, 867 (D.C.Cir.1983); *LaBash v. United States Dept. of the Army,* 668 F.2d 1153, 1155–56 (10th Cir.), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2299, 73 L.Ed.2d 1303 (1982). *But see Welch v. United States,* 446 F.Supp. 75, 77–78 (D.Conn.1978) (suggesting broad judicial review). We now join our sister circuits in holding that section 2735 is unambiguous and that absent a constitutional claim the disallowance of a claim under the Military Claims Act is not subject to judicial review.

### B. Constitutional Claims

Our next task is to determine whether the Schneiders' allegations of equal protection and due process violations state any valid constitutional claim that would justify judicial review of this case. The Schneiders first contend that the Military Claims Act deprives them of their right to equal protection under the Fifth Amendment because it precludes judicial review while similarly situated litigants under the FTCA are entitled to bring suit. The Schneiders have no cause of action under the FTCA because it excludes from its remedial scheme a cause of action for a governmental tort committed in a foreign country. *See* 28 U.S.C. § 2680(k). Because the government has not waived its sovereign immunity when a tort is committed in a foreign country, the Schneiders' only remedy lies within the scheme of the Military Claims Act, which precludes judicial review of the settlement or disallowance of a claim. Thus, the Schneiders contend, the Military Claims Act deprives them of equal protection. We disagree.

First, Congress's power to maintain or to waive sovereign immunity for suits against the government is absolute and is inherent in the government's status as a sovereign. *Lynch v. United States,* 292 U.S. 571, 574, 54 S.Ct. 840, 78 L.Ed. 1434 (1934); *Heller,* 776 F.2d at 98. Second, the Schneiders have not alleged that they are members of a protected class, and in our view, the distinction between victims within the United States and victims in a foreign country is a rational distinction. *See Heller,* 776 F.2d at 98 ("government's desire to avoid application to it of the vagaries of foreign law is an important and rational consideration"). We conclude that, because Slaine's injury occurred in a foreign country, the Schneiders are not similarly situated to persons injured by governmental torts within the United States and that this distinction is rational. Therefore, the Schneiders' equal protection challenge fails.

The Schneiders also contend that the USAF violated their right to due process because the USAF conducted ex parte communications with experts without giving the Schneiders an opportunity for cross-examination, failed to timely inform the Schneiders of the substance of those expert opinions, and failed to contact the Schneiders for additional information or to inform them of the timing of the decision. It is a well-settled principle, however, that the requirements of procedural due process apply only when there has been a deprivation of life, liberty, or property within the meaning of the Fifth or Fourteenth Amendment. *See Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 569–72, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972); *Williams v. Nix,* 1 F.3d 712, 717 (8th Cir.1993). Not every "grievous loss visited upon a person by

the [government] is sufficient to invoke the procedural protections of the Due Process Clause." *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). The relevant consideration for our analysis is a two-part inquiry. We must determine (1) whether the Schneiders were deprived of a protected interest, and if so, (2) what process was due. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982); *Post v. Harper*, 980 F.2d 491, 493 (8th Cir. 1992).

■ The Schneiders argue that they were deprived of a cause of action by the Military Claims Act's preclusion of judicial review. We recognize that a cause of action is a property interest protected by the Due Process Clause. *See Logan*, 455 U.S. at 428, 102 S.Ct. at 1153–54. However, the Military Claims Act does not grant claimants a cause of action against the government. *See Towry*, 459 F.Supp. at 105 (Military Claims Act confers no right of action to pursue judicial remedy) (opinion adopted by Fifth Circuit on appeal). Further, as already noted, the government has not waived sovereign immunity for tort claims against the government that arise in a foreign country. *See* 28 U.S.C. § 2680(k). Thus, the Schneiders have no cause of action against the government, and as a result, preclusion of judicial review by the Military Claims Act does not deprive them of a cause of action. *See Heller*, 776 F.2d at 98 (exclusivity of a remedy under the Military Claims Act is not itself a denial of due process). *See also Hata*, 23 F.3d at 233–34 ("preclusion of judicial review under the [Military Claims Act] does not violate due process").

The Schneiders cannot claim that they were deprived of a property interest on the ground that they were entitled to a settlement under the Military Claims Act. In *Roth*, the Supreme Court discussed what constitutes a property interest:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. . . .

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

408 U.S. at 577, 92 S.Ct. at 2709. The scope of the Schneiders' interest in a settlement is defined by the Military Claims Act and the applicable regulations that define a person's eligibility for settlement. The Act and its regulations create an opportunity to file a claim for settlement, not an entitlement to payment of a benefit. A settlement under the Act is not in the nature of an entitlement but is conditioned upon both the claimant's ability to substantiate a negligence claim and the USAF's discretion in determining whether to pay a settlement. We conclude that, because the Schneiders have not demonstrated that the USAF deprived them of a liberty or property interest by denying settlement of their claim, the Due Process Clause does not apply. Therefore, we do not reach the question of what process was due.

## III. CONCLUSION

We conclude that the Military Claims Act is not subject to judicial review absent a constitutional claim and that the Schneiders have failed to demonstrate a valid constitutional claim in this case. Accordingly, we affirm the judgment of the district court dismissing the case for lack of jurisdiction and for failure to state a claim upon which relief may be granted.

HEANEY, Senior Circuit Judge, dissenting.

I agree with the majority that no equal protection violation occurred and that there is no judicial review of Military Claims Act (MCA) determinations absent a constitutional claim. I conclude, however, that the MCA does confer an entitlement to a settlement upon a showing of negligence and therefore due process requires fair procedures to determine negligence. Absent such procedures, the promise of benefits to those who are injured by the negligence of the military is a sham.

The majority states that MCA provides an opportunity to file a complaint but that payment of a settlement is discretionary even if negligence is shown. Its analysis precludes any due process challenge no matter how arbitrarily or improperly the complaint has been handled or disposed of. I do not believe that this is the "opportunity" envisioned by Congress when it established the complaint procedure under the MCA, particularly given the fact that the MCA is the exclusive remedy for claimants. The MCA provides compensation to persons injured in the course of medical treatment if they can show that their injuries resulted from negligence by the physicians involved. Due process requires that claimants be afforded fair procedures for presenting their claims of negligence.

Cases from other circuits have acknowledged the possibility that review of an MCA claim is available when a failure of due process is implicated. The MCA "may well permit some limited review, for example where there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination." *Broadnax v. United States Army,* 710 F.2d 865, 867 (D.C.Cir.1983) (quoting *Scroggins v. United States,* 397 F.2d 295, 297 (Ct.Cl.), *cert. denied,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968)) (internal quotations omitted); *see also Hata v. United States,* 23 F.3d 230, 233–34 (9th Cir.1994) (noting *Scroggins* quoted in *Lindahl v. Office of Personnel Management,* 470 U.S. 768, 791, 105 S.Ct. 1620, 1633, 84 L.Ed.2d 674 (1985)); *Rodrigue v. United States,* 968 F.2d 1430, 1432 (1st Cir.1992) (same); *LaBash v. United States Dep't of the Army,* 668 F.2d 1153, 1156 (10th Cir.) (suggesting failure to comply with statutory process would constitute due process violation), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2299, 73 L.Ed.2d 1303 (1982).

I believe that a substantial departure from important procedural rights has occurred in this case. I would agree that the Air Force may use a process that consists entirely of written submissions by the parties. If, however, the Air Force departs from the written

process and interviews one of the actors, fairness requires that the claimant also be given an opportunity to question that person. According to the final letter denying the Schneiders' appeal, the Air Force "extensively interviewed" Dr. Lund about the medical treatment received by Slaine Schneider and about the opinion of the Schneiders' medical expert, Dr. Sisson, that such treatment was negligent. The Schneiders should have been provided an equal opportunity to question Dr. Lund to explore the basis of his opinion. This is particularly important given the fact that the Air Force is not a neutral or independent adjudicator but rather is investigating one of its own physicians. The Air Force deprived the Schneiders of due process when it failed to afford them that opportunity.