**Barbara DUNCAN, Plaintiff,**

v.

**Togo WEST, Jr., Defendant.**

**Civil Action No. 96–1648–A.**

United States District Court, E.D. Virginia, Alexandria Division.

June 4, 1997.

Mickale C. Carter, Law Office of Mickale C. Carter, Alexandria, VA, for Plaintiff.

Helen F. Fahey, U.S. Attorney, James E. Macklin, Assistant U.S. Attorney, Alexandria, VA (Lieutenant Colonel Richard O. Hatch, U.S. Army Litigation Division, Arlington, VA, of counsel), for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This case presents the question, not yet resolved in this circuit, whether the U.S. Army's disallowance of an administrative claim for medical malpractice under the Military Claims Act ("MCA"), 10 U.S.C. § 2733, is subject to judicial review.

## I [1]

While stationed with her service member husband in Europe, plaintiff, Barbara Duncan ("Duncan"), received health care at the U.S. Army Health Clinic (4th General Dispensary), in Darmstadt, Federal Republic of Germany. On September 3, 1991, Duncan, who was four months pregnant, sought treatment at the U.S. Army Health Clinic for nausea, vomiting, and diarrhea associated with a decreased appetite. Captain Michael Pylman, a military physician, conducted a pelvic ultrasound examination, an abdominal examination, and urinalysis, concluding ultimately that Duncan suffered from gastroenteritis. Accordingly, Dr. Pylman advised Duncan to increase her intake of clear liquids, to maintain a bland diet, and to return to the military clinic if her symptoms persisted. Two days later, Duncan returned to the clinic complaining of continuing lower abdominal pain. Dr. Pylman referred her to Dr. Edwin Asemota, a civilian physician at the clinic.[2] Like Dr. Pylman, Dr. Asemota detected nothing beyond gastroenteritis.

---

1. For the purpose of resolving defendants' motion to dismiss, the uncontroverted facts as alleged by plaintiff, the non-moving party, must be accepted as true. *See Adams v. Bain*, 697 F.2d 1213 (4th Cir.1982); *see generally* 5A C. Wright & A. Miller, Federal Practice and Procedure, § 1350 at 218–220.

2. In 1986, Congress created the "Military–Civilian Health Services Partnership Program." 10 U.S.C. § 1096. Under this program, the military services may enter into resource sharing agreements with civilian physicians, known as CHAMPUS (Civilian Health And Medical Program for the Uniformed Services) partners. These CHAMPUS partners, like Dr. Asemota, provide health care for military dependents in government medical facilities, using government equipment, supplies, and staff. *See* 32 C.F.R. § 199.1(p).

On September 6, 1991, Duncan was hospitalized by a German physician, Dr. Wolfgang Cikrit, for a severe streptococcal infection and preterm labor and treated for ten days with intravenous antibiotics. Then, on October 4, 1991, Duncan was readmitted to the hospital by another German physician, Dr. H.H. Strack, for an exploratory laparotomy. The surgical procedure revealed generalized peritonitis with multiple abscesses owing to a ruptured appendix. Because of a related loss of amniotic fluid, Duncan's German physicians advised her to terminate her pregnancy. She accepted this medical advice and an abortion was performed on October 26, 1991.

On August 31, 1993, Duncan filed an administrative claim against the United States in the amount of $2,000,000. Specifically, Duncan's claim alleged that Dr. Pylman's and Dr. Asemotas negligent failures to diagnosis and treat her appendicitis in a timely manner proximately resulted in a ruptured appendix, peritonitis, and premature termination of pregnancy. On December 21, 1994, the Army denied Duncan's claim.[3] In doing so, the Army determined that Duncan had presented none of the classic symptoms of acute appendicitis (with the possible exception of a low-grade fever) on her initial visit to the clinic on September 3. Therefore, the Army concluded that Dr. Pylman's evaluation and assessment were appropriate in the circumstances. Further, the Army ruled that Dr. Asemota, who evaluated Duncan on September 5, did not qualify as a "civilian officer or employee" of the Army, and, as a consequence, the United States was not liable for Dr. Asemota's purportedly negligent acts or omissions.

After receiving an extension of time, Duncan filed an administrative appeal on May 1, 1995. The appeal contained over seventy pages of argument, an expert opinion, and other materials. Additionally, Duncan's counsel submitted supplemental material and argument which, although untimely, was accepted and considered by the appellate review board. On October 22, 1996, the Secretary of the Army, by and through his delegate, rejected Duncan's appeal and denied her medical malpractice claim.

On November 14, 1996, Duncan filed the instant action for judicial review of the Army's denial of her administrative claim. Then, on April 21, 1997, after the long-delayed service of the complaint,[4] defendant, Secretary of the Army Togo West, Jr., filed the instant motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed.R.Civ.P. The Court heard oral argument and granted the motion to dismiss. *Duncan v. West*, C.A. No. 96–1648–A (Order, May 9, 1997). This Memorandum Opinion elaborates on the Court's ruling from the bench.

## II

The government contends that the Court lacks subject matter jurisdiction over Duncan's action because: (1) the MCA expressly precludes judicial review of the military's disposition of administrative claims; and (2) even assuming, arguendo, the existence of a "constitutional exception" to this general preclusion rule, Duncan fails to allege a cognizable constitutional claim. Duncan disagrees, arguing instead: (1) that the Army's decision to deny her administrative claim raises a federal question under the MCA and is subject to judicial review as final agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702; and (2) that defendant denied her due process and equal protection pursuant to the Fifth Amendment.

### A

■ As a threshold matter, Duncan contends that the Army erred when it applied the MCA, instead of the Foreign Claims Act ("FCA"), 10 U.S.C. § 2734, to her medical malpractice claim.[5] Duncan's contention is unfounded. The FCA, by its express terms,

---

**3.** The Army set forth the basis for the denial in a denial letter, which Duncan has attached to her complaint in this action.

**4.** Plaintiff's counsel stated at the hearing that the 97 day delay in serving defendant was occasioned by her busy schedule as a solo practitioner.

**5.** This threshold matter is merely academic. Since the judicial preclusion rule, 10 U.S.C. § 2735, applies to both the FCA and MCA, the analysis in part II.B is pertinent regardless of which statute the Army relied on in the circumstances.

applies only to a claimant who is an "inhabitant of a foreign country." 10 U.S.C. § 2734.[6] While Duncan contends that a military dependent is an "inhabitant of a foreign country" by virtue of his or her mere presence there, that contention contradicts the well-settled and consistent administrative interpretation of the FCA. In the regulations implementing the FCA, the Army expressly defines the phrase "inhabitant of a foreign country" to exclude dependents of military personnel who reside temporarily in a foreign country.[7] And this regulatory definition finds firm support in the plain and ordinary meaning of the statutory term "inhabitant." An "inhabitant" is "[o]ne who resides actually and permanently in a given place, and has his domicile there." Black's Law Dictionary (6th ed.1990). Military dependents do not fall within this category. In short, the FCA does not apply to dependents of U.S. military personnel who temporarily reside outside the United States pursuant to military orders. Here, at the time of the events in question, Duncan was a permanent resident of this country; her transient presence in Germany was due only to her husband's military assignment. Accordingly, the Army properly construed her administrative claim as one asserted under the MCA, not the FCA.

**B**

The government argues that the Army's denial of Duncan's administrative claim deprives the Court of subject matter jurisdiction because the MCA explicitly precludes judicial review of "final and conclusive" decisions. Duncan contends that the MCA's "final and conclusive" language does not thwart judicial review, but merely prevents other federal agencies from reviewing and possibly rejecting the Army's proposed settlements of MCA claims. Thus, the dispositive issue here is whether the MCA prohibits claimants from seeking judicial review of the Army's determination.

■ In considering whether a federal statute permits judicial review of a final administrative decision, it is important to recognize the existence of a strong presumption in favor of such review. *Abbott Labs. v. Gardner*, 387 U.S. 136, 140–41, 87 S.Ct. 1507, 1510–12, 18 L.Ed.2d 681 (1967); *Block v. Community Nutrition Inst.*, 467 U.S. 340, 349, 104 S.Ct. 2450, 2455–56, 81 L.Ed.2d 270 (1984). Even so, subject to certain constitutional constraints, this general anti-preclusion presumption is overcome where the statute in issue is "specific in withholding such review [or] upon its face give[s] clear and convincing evidence of an intent to withhold it." *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 671, 106 S.Ct. 2133, 2136, 90 L.Ed.2d 623 (1986); *see also Lindahl v. Office of Personnel Mgmt.*, 470 U.S. 768, 778–79, 105 S.Ct. 1620, 1626–27, 84 L.Ed.2d 674 (1985).

Given this standard, analysis properly begins with the MCA's language, which authorizes the Secretary of the Army to promulgate regulations under which he or the Judge Advocate General "may settle, and pay in the amount not more than $100,000, a claim against the United States for ... personal injury or death ... caused by a civilian officer or employee ... or a member of the Army ... acting within the scope of his employment...." 10 U.S.C. § 2733(a). Section 2731 of the Act broadly defines the

---

6. The FCA provides, in pertinent part, that:

(a) To promote and to maintain friendly relations through the prompt settlement of meritorious claims, the Secretary concerned, or an officer or employee designated by the Secretary, may appoint, under such regulations as the Secretary may prescribe, one or more claims commissions, each composed of one or more officers or employees or combination of officers or employees of the armed forces, to settle and pay in an amount not more than $100,000, a claim against the United States for—

(3) personal injury to, or death of, any inhabitant of a foreign country....

7. The FCA authorizes the Secretary of the Army to promulgate such regulations. Thus, according to Army Regulation 27–20:

U.S. military personnel ... and their family members, who are normally residents of the United States and who, at the time of the incident giving rise to the claim, are residing in a foreign country primarily because of their own or their sponsor's duty or employment status, are not foreign inhabitants and are excluded from coverage under the FCA.

term "settle" to include the "disallowance" of a claim. 10 U.S.C. § 2731.[8] Further, § 2735 of the Act provides that "[n]otwithstanding any other provision of law, the settlement of a claim under section 2733 ... of this title is final and conclusive." 10 U.S.C. § 2735.

■ The MCA could scarcely be clearer on its face. While Duncan argues that § 2735 does not overcome the presumption in favor of judicial review, the provision's plain and unambiguous language makes unmistakably clear that the Army's determination is final in all circumstances. Significantly, section 2735 does not merely state that an agency decision is "final"[9] or "final and conclusive;"[10] instead, it says that the Army's decision is "final and conclusive" "notwithstanding any other provision of law." The phrase "notwithstanding any other provision of law" obviously precludes an action under the APA, which provides a general cause of action for persons adversely affected by an agency's decision. 5 U.S.C. § 702. To interpret § 2735 as allowing judicial review of the Army's decision, as Duncan argues, would render that phrase meaningless.

The question of whether the MCA precludes judicial review is unresolved in this circuit, but not elsewhere. The overwhelming weight of judicial authority, indeed seven circuits and numerous district courts, persua-sively holds that § 2735 rebuts the presumption in favor of judicial review of an adverse administrative decision.[11] There is only one contrary decision.[12] Duncan urges the Court to conclude, as did that lone district court, that Congress intended judicial review of settlements under the MCA. But that interpretation of § 2735 is unpersuasive in light of the MCA's plain and unambiguous language to the contrary.

### C

The conclusion that the MCA precludes judicial review of Army decisions to deny MCA claims does not end the analysis. Courts have appropriately recognized that the MCA's preclusion of judicial review can be overcome if constitutional violations can be established. See, e.g., Hata, 23 F.3d at 233; Poindexter, 777 F.2d at 234; Rhodes v. United States, 760 F.2d 1180, 1184–85 (11th Cir.1985); Niedbala, 37 Fed.Cl. at 51. Here, Duncan contends that her complaint raises six legal questions and two constitutional concerns that justify judicial review of the Secretary's decision pursuant to the "constitutional exception" to the statutory preclusion of review.

■ As an initial matter, Duncan's six legal claims are not of constitutional stature and, as a consequence, do not call into play

8. In full, § 2731 provides that: "[i]n this chapter, 'settle' means consider, ascertain, adjust, determine, and dispose of a claim, whether by full or partial allowance or by disallowance."

9. See. e.g., Shaughnessy v. Pedreiro, 349 U.S. 48, 51–52, 75 S.Ct. 591, 594, 99 L.Ed. 868 (1955) (holding that the Immigration Act of 1952, which provides that deportation orders of the Attorney General shall be "final," prevents further administrative review, but not judicial review).

10. See, e.g., Lindahl v. Office of Personnel Mgmt., 470 U.S. 768, 791, 105 S.Ct. 1620, 1633, 84 L.Ed.2d 674 (1985) (finding that the Civil Service Retirement Act, which provides that decisions concerning disability retirement determinations are "final and conclusive," precludes only judicial review of agency fact-finding).

11. See, e.g., Collins v. United States, 67 F.3d 284, 288 (Fed.Cir.1995); Schneider v. United States, 27 F.3d 1327, 1332 (8th Cir.1994), cert. denied, 513 U.S. 1077, 115 S.Ct. 723, 130 L.Ed.2d 628 (1995); Hata v. United States, 23 F.3d 230, 233 (9th Cir.1994); Rodrigue v. United States, 968 F.2d 1430, 1434 (1st Cir.1992); Poindexter v. United States, 777 F.2d 231, 233 (5th Cir.1985); Broadnax v. United States Army, 710 F.2d 865, 867 (D.C.Cir.1983); Labash v. United States Dept. of the Army, 668 F.2d 1153, 1156 (10th Cir.), cert. denied, 456 U.S. 1008, 102 S.Ct. 2299, 73 L.Ed.2d 1303 (1982).

Further, numerous district courts have held that § 2735 precludes judicial review of MCA claim settlements by disallowance. See, e.g., Niedbala v. United States, 37 Fed.Cl. 43, 50 (1996); Hass v. United States Air Force, 848 F.Supp. 926, 933 (D.Kan.1994); MacCaskill v. United States, 834 F.Supp. 14, 17 (D.D.C.1993), aff'd, 24 F.3d 1464 (D.C.Cir.1994); Vogelaar v. United States, 665 F.Supp. 1295, 1298 (E.D.Mich.1987); Bryson v. United States, 463 F.Supp. 908, 910 (E.D.Pa.1978); Towry v. United States, 459 F.Supp. 101, 107–08 (E.D.La.1978), aff'd, 620 F.2d 568 (5th Cir.1980), cert. denied, 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981).

12. See Welch v. United States, 446 F.Supp. 75 (D.Conn.1978).

the "constitutional exception."[13] Further, Duncan's two conclusory allegations of constitutional violations also lack merit. First, Duncan claims that the Secretary denied her procedural due process by failing to inform her of the basis for denying her claim. Specifically, Duncan alleges that she requested, but did not receive, "information concerning the employment relationship the Army had with the civilian doctor" and a "copy of the expert report upon which the Secretary based his apparent conclusion that the conduct of the doctors did not breach the standard of care," all in violation of AR 27-20, paragraph 3-17d.[14]

█ This claim fails for several reasons. Even assuming, arguendo, that the Army violated the regulation, its action did not offend the constitution. Not every failure by an administrator to adhere to his or her agency's rules offends due process. "Rather, the due process clause is only implicated when an agency violates regulations 'mandated by the Constitution or federal law'...." *Palmer v. Merluzzi*, 689 F.Supp. 400, 411 (D.N.J.1988) (quoting *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979)). The regulation at issue here is not statutorily or constitutionally based or required. And, in any event, the Army's denial letter provided Duncan with sufficient notice of the bases for denying her claim. Duncan received all the process she was constitutionally due. Further, there was no regulatory violation. AR 27-20, by its terms, did not require the Army to furnish the requested documents. Thus, the regulation applies only to "documentary evidence in the claims file" and Duncan's counsel was advised on August 26, 1996 that the Army did not have a copy of Dr. Asemota's partnership agreement in its files. Moreover, the regulation expressly denies access not permitted "by law or regulation." The provisions of 10 U.S.C. § 1102 (quality assurance records) and Department of Army Pamphlet 27-162, paragraph 5-13 (privileged reports prepared by the Department of Legal Medicine) authorized the Army to withhold from Duncan the documents containing the medical opinions of its experts.

█ Second, Duncan invokes equal protection in an attempt to identify a colorable constitutional claim. Specifically, she alleges that "[t]here is no rational basis for the extreme level of disparate treatment between military dependents injured in military health care facilities in the United States and military dependents injured in military health care facilities in foreign countries." In other words, Duncan complains about the fact that judicial review is available for an agency's administrative settlement of FTCA claims, but not MCA claims.[15]

This claim is not new; it has been previously raised and soundly rejected. In *Schneider v. United States*, 27 F.3d 1327 (8th Cir.1994), plaintiffs, who alleged medical mal-

---

13. Specifically, Duncan alleges that:

    (1) the MCA's regulations inappropriately impose a fault requirement as a condition precedent to recovery;
    (2) the Secretary violated Army regulations by failing to apply the generally accepted principles of agency law to determine whether Dr. Asemota, the CHAMPUS partner physician, was indeed an "employee";
    (3) the Secretary violated the MCA by applying the independent contractor exception of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, to her administrative claim;
    (4) Section 2680(k) of the FTCA precludes the Secretary's reliance on FTCA jurisprudence to deny her MCA claim;
    (5) the Secretary's conclusion concerning Dr. Pylman's evaluation and assessment was wrong; and
    (6) the Secretary's discretion to disallow the MCA claims of dependents who temporarily reside overseas amounts to a breach of the military's statutory and contractual obligation to provide quality health care.
Notwithstanding Duncan's contentions, none of these purported legal errors support the exercise of jurisdiction in this instant case.

14. That regulation provides that: "A request by the claimant for access to documentary evidence in the claims file to be used in considering the appeal may be granted *unless access is not permitted by law or regulation.*"

15. Duncan has no cause of action under the FTCA because it excludes from its remedial scheme a cause of action for a governmental tort committed in a foreign country. 28 U.S.C. § 2680(k). And since the government has not waived its sovereign immunity when a tort is committed in a foreign country, Duncan's only remedy lies within the scheme of the MCA, which precludes judicial review of the disallowance of her claim.

practice in an overseas military hospital, also argued that the MCA deprived them of equal protection "because it precludes judicial review while similarly situated litigants under the FTCA are entitled to bring suit." *Id.* at 1332. The Eighth Circuit dismissed the claim, concluding that plaintiffs "are not similarly situated to persons injured by governmental torts within the United States" and that, in any event, "the distinction between victims within the United States and victims in a foreign country is ... rational." *Id.* And in *Heller v. United States,* 776 F.2d 92 (3d Cir.1985), the Third Circuit reached the same result by identifying another rational explanation for this distinction: "It is well-recognized that the [MCA's] administrative claims procedure is an appropriate balance between individual rights and Congress' desire to avoid the disruptive effect that judicial review may have on 'the prompt and authoritative administrative settlement of claims' against the military." *Id.* at 98 (citation omitted). In short, Duncan's equal protection claim, distilled to its essence, merely reflects her disagreement with Congress' decision to entrust the Secretary of the Army with unreviewable authority to resolve MCA claims. This disagreement is not a basis for finding a violation of equal protection.

For the foregoing reasons, Duncan has not demonstrated a substantial violation which might fall within the "constitutional exception" to § 2735. Because of her failure to do so, the motion to dismiss was granted and an appropriate Order has already issued.

The Clerk is directed to send copies of this Memorandum Opinion to all counsel of record.