# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3843

_____

| | |
|---|---|
| Ali Abdulla Sabhari; Susan Sherry-Sabhari, | * |
| | * |
| | * |
| Plaintiffs-Appellants, | * |
| | * |
| v. | * Appeal from the United States |
| | * District Court for the |
| Janet Reno, Attorney General of the | * District of Minnesota. |
| United States; Curtis J. Aljets, Acting | * |
| District Director, United States | * |
| Immigration and Naturalization Service, | * |
| | * |
| Defendants-Appellees. | * |

_____

Submitted: June 17, 1999
Filed: November 26, 1999

_____

Before RICHARD S. ARNOLD, BRIGHT and ROSS, Circuit Judges.
_____

BRIGHT, Circuit Judge.

After the Immigration and Naturalization Service ("INS") uncovered evidence to suggest that Ali Sabhari's marriage to a United States citizen was a sham, the INS denied Sabhari's petition to adjust his immigration status. The aggrieved Sabhari, and his wife, brought suit against the Attorney General and the District Director.

On cross-motions for summary judgment, the district court dismissed the Sabharis' suit without prejudice.  In so doing, the court found that: (1) following the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"),[1] district courts lack all subject matter jurisdiction to entertain challenges to administrative actions of the INS; and (2) even if the court had jurisdiction, the order of the Board of Immigration Appeals ("BIA") in this case was supported by substantial evidence of immigration fraud.  The Sabharis appeal.

We disagree with the district court on the question of jurisdiction.  Even in light of IIRIRA, district courts may retain jurisdiction to review some administrative actions unrelated to orders of removal.  However, because the INS was well within the scope of its discretion when it rejected Sabhari's petition for adjustment, we affirm.

## I.  BACKGROUND

Ali Sabhari ("Sabhari") is a native of Kuwait.  On November 25, 1993, he entered the United States on a six-month, non-immigrant, visitor's visa.  After that visa expired on May 25, 1994, Sabhari remained in this country illegally.

When he came to the United States, Sabhari was legally married to Khadijah Mohammed ("Mohammed"), with whom he had four children.  With the exception of a brief visit by Mohammed when she brought the couple's youngest child to the United States for the purpose of medical treatment, Mohammed and the children remained in Kuwait at all times relevant to this case.  However, despite his pre-existing marriage

---

[1]Pub. L. No. 104-208, 110 Stat. 3009-546, enacted on September 30, 1996, as amended by the Act of October 11, 1996, Pub. L. No. 104-302, 110 Stat. 3656.

to Mohammed, Sabhari met Susan Louise Sherry ("Sherry"),[2] a United States citizen, and began to court her in the autumn of 1994.

Sabhari obtained a proxy divorce from Mohammed on June 18, 1995.[3] He married Sherry four weeks later. Shortly thereafter, on July 31, 1995, Sherry filed a visa petition on behalf of her new husband which asked the INS to classify him as the relative of a United States citizen. On that basis, Sabhari concurrently filed his own petition seeking adjustment of status and permanent residency.

Sabhari and Sherry were subsequently interviewed by the INS and submitted supporting documents attesting to the genuine nature of their union. Nevertheless, during the course of its investigation, the INS uncovered evidence to suggest that the marriage was in fact a sham. In addition to several inconsistencies in Sabhari's submissions and statements, Sabhari's ex-wife Mohammed admitted to an investigator from the United States Embassy in Kuwait that: Sabhari came to the United States in order to obtain residency; she and Sabhari agreed to divorce and then remarry when Sabhari received permanent residency; and, to that end, the couple kept their divorce secret from their children and parents. Although Sabhari disputed Mohammed's account of their arrangement in rebuttal submissions, the INS received additional information from other members of the Sabhari family which corroborated the essential details reported by the Embassy investigator.

As a result, the District Director of INS decided that Sabhari had failed to show his marriage to Sherry was entered by both parties in good faith. In a decision dated

---

[2]Shortly after her marriage, Susan Sherry changed her legal surname to Sherry-Sabhari. We refer to her by her maiden name in this opinion only for the sake of brevity and clarity.

[3]On appeal, the INS does not dispute that the formalities of Sabhari's divorce comply with the requirements of Kuwaiti law.

December 17, 1996, the District Director therefore denied Sherry's petition and refused to classify Sabhari as the immediate relative of a United States citizen.[4]

Sherry appealed to the Board of Immigration Appeals ("BIA"). The BIA affirmed the INS decision in an order dated June 2, 1997. The BIA agreed with the District Director's determination that Sabhari entered his marriage to Sherry for the primary purpose of evading the immigration laws and did not intend to establish a life together with her at the time of their marriage. In short, the BIA determined that Sabhari did not qualify for classification as the immediate relative of a United States citizen because Sherry presented insufficient evidence to "overcome the evidence of fraud raised by the record" — evidence which suggested that Sabhari "contrived to remarry his ex-wife after having acquired lawful permanent residence in the United States through his present marriage." Joint App. at 43.

On June 27, 1997, the Sabharis filed this suit in the United States District Court for the District of Minnesota seeking an order to compel INS approval of their respective petitions. After receiving cross-motions for summary judgment, the court ruled in favor of the INS and dismissed the Sabharis' suit for want of subject matter jurisdiction and, in the alternative, on the merits. See Sabhari v. Reno, No. 97-1534 (D. Minn. Aug. 21, 1998) (order dismissing complaint) ("Slip Op."). The Sabharis have timely appealed to this court.

## II. DISCUSSION

### A.     Jurisdiction

---

[4]Sabhari's own petition for adjustment of status, contingent as it was on his classification as a relative of a United States citizen, was denied in due course by a decision rendered July 2, 1997.

The district court concluded that it lacked jurisdiction to consider the Sabharis' challenge to the BIA's order. When a district court so finds, we make our review de novo. See Schneider v. United States, 27 F.3d 1327, 1331 (8th Cir. 1994).

In this case, when considering the parameters of its jurisdiction, the district court's task was complicated by the fact that the Sabharis offered a litany of ostensibly relevant jurisdictional theories.[5] Many of these theories were summarily dispatched by the court because they were inapplicable.[6] The only jurisdictional theory raised by the Sabharis to which the court gave meaningful treatment was 8 U.S.C. § 1329 (Supp. III 1997).

Historically, § 1329 provided the federal district courts with an explicit jurisdictional grant to review discretionary decisions of the INS. Indeed, prior to 1996, it provided that, "[t]he district courts of the United States shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions of this subchapter." However, § 381(a) of the IIRIRA amended 8 U.S.C. § 1329. With these new and significant additions, the present version of § 1329 now states in relevant part:

> The district courts of the United States shall have jurisdiction of all causes, civil and criminal, brought by the United States that arise under the provisions of this subchapter. . . . Nothing in this section shall be

---

[5]In support of jurisdiction, the Sabharis' pleadings offered each of the following: 28 U.S.C. § 2241, habeas corpus; 28 U.S.C. § 1361, mandamus; 28 U.S.C. § 2201, et seq., Declaratory Judgment Act; 28 U.S.C. § 1331, federal question jurisdiction; 5 U.S.C. § 701, et seq., Administrative Procedure Act; and 8 U.S.C. § 1329, Immigration and Nationality Act.

[6]For example, the district court properly found that 28 U.S.C. § 2241 conferred no habeas corpus jurisdiction in this case because neither Sabhari nor Sherry was in custody, as that statute requires.

construed as providing jurisdiction for suits against the United States or its agencies or officers.

Emphasis added. The district court found that this language affords the Sabharis no avenue of relief because § 1329 no longer provides a basis for jurisdiction over actions, such as the present, instituted against officers of the United States. See Slip Op. at 5.

We agree. But as other courts have noted, although the new language inserted into 8 U.S.C. § 1329 by the IIRIRA divests the district courts of some of the jurisdiction they once enjoyed, the new incarnation of § 1329 nevertheless fails to expressly preclude litigants from successfully invoking other, alternative bases for subject matter jurisdiction. See Shanti, Inc. v. Reno, 36 F. Supp. 2d 1151, 1159 (D. Minn. 1999). Indeed, use of the phrase "nothing in this section" implies that other sections remain viable jurisdictional alternatives because that phrase contrasts so sharply with other, more strongly worded, jurisdiction-stripping provisions of the IIRIRA. See id. (contrasting § 1329 with 8 U.S.C. § 1252(a)(2)(B) and § 1252(g) — both of which employ the more forceful phrase "not withstanding any other provision of law").

In short, although we agree with the district court that § 1329 does not provide a grant of jurisdiction that may be employed in these circumstances, it is clear that § 1329 does nothing to foreclose any other jurisdictional mechanism, presuming of course that the predicates for such other mechanism are duly established. We emphasize that the phrase "nothing in this section shall be construed [to provide] jurisdiction" does not preclude jurisdiction under other provisions of law. Id.

The INS argues that, even if we are correct in our analysis of § 1329, a second provision added to the Immigration and Nationality Act ("INA") by the IIRIRA strips the district court of jurisdiction in any event. That provision is 8 U.S.C. § 1252(g) (Supp. III 1997). The district court apparently agreed, insofar as it noted that

"Congress has expressly limited judicial review of immigration cases to the procedures contained in § 1252."  Slip Op. at 6.

Section 1252(g), titled "Exclusive jurisdiction," states:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

While this language might have been thought to cut quite a broad swath, the Supreme Court held to the contrary in Reno v. Arab-American Anti-Discrimination Comm., 119 S. Ct. 936 (1999).  Instead, this section is to be read narrowly and precisely.  See id. at 943 (holding that § 1252(g) eliminates judicial review only for "three discrete actions" of the Attorney General undertaken during the deportation process).  See also Shah v. Reno, 184 F.3d 719, 722 (8th Cir. 1999) (recognizing that, after Arab-American Anti-Discrimination Comm., § 1252(g) does not proscribe review over even the generality of deportation matters).  Thus, because Sabhari's petition for adjustment of status is separate and distinct from any matter related to an order of deportation, § 1252(g) "has nothing to do with the present case, . . . ."  Shah, 184 F.3d at 722.

Having now held that the changes wrought by IIRIRA do not foreclose all possible review of INS administrative actions in the district court — at least when those actions do not implicate the deportation process — we must briefly consider the alternative jurisdictional grounds which were summarily rejected by the district court. We need not go far, however, because there is precedent, under similar circumstances, to support the invocation of jurisdiction through the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq., and 28 U.S.C. § 1331 (1994). See Abboud v. INS, 140 F.3d 843, 846-47 (9th Cir. 1998) (jurisdiction to consider denial of visa petition

established under APA); <u>Shanti, Inc. v. Reno</u>, 36 F. Supp. 2d 1151, 1159-61 (D. Minn. 1999) (same); <u>Burger v. McElroy</u>, 1999 WL 203353 (S.D.N.Y.) (jurisdiction to consider denial of visa petition established under 28 U.S.C. § 1331).

Section 1331 is familiar, of course, as the general grant of civil federal question jurisdiction to the district courts for actions arising under the Constitution, laws, or treaties of the United States. <u>See</u> 28 U.S.C. § 1331. Nevertheless, § 1331 does not, in and of itself, create substantive rights in suits brought against the United States. <u>See</u> <u>Hagemeier v. Block</u>, 806 F.2d 197, 202-03 (8th Cir. 1986).[7] Thus, if § 1331 is to be used to secure relief against the United States, it must be tied to some additional authority which waives the government's sovereign immunity. Such a waiver may be found in the Administrative Procedure Act.

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. In addition, the APA also provides that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704.

The issue of jurisdiction in this case is a difficult one of statutory interpretation. We hold that the district court did have jurisdiction to decide the merits of the Sabharis' petitions. <u>See</u> <u>Abboud</u>, 140 F.3d at 846-47; <u>Shanti</u>, 36 F. Supp. 2d. at 1159-61.

### B.     The Merits of the Sabharis' Complaint

---

[7]Although, in at least one similar case, the INS conceded that § 1331 alone would support jurisdiction. <u>See</u> <u>Burger</u>, 1999 WL 203353 at *3 ("[The INS] concede[s] that this Court may assert jurisdiction under 28 U.S.C. § 1331 to review the denial of [petitioner's] visa petitions . . . .") (quotation omitted).

Having concluded that the APA may provide a foundation for review of this case, we now turn to the district court's alternative grounds for dismissal — namely that the order of the BIA denying Sabhari classification as a relative of a United States citizen is supported by substantial evidence.

When a United States citizen marries an alien, the citizen may petition the INS to have his or her spouse classified as an immediate relative. See 8 U.S.C. § 1154 (establishing petitioning procedure) and § 1151(b)(2)(A)(i) (defining immediate relative to include citizen's spouse). Once so classified, the alien may then apply under a separate procedure for an adjustment of immigration status — a process which will upgrade the alien to the status of lawful permanent resident of the United States. See 8 U.S.C. § 1255(a)(1994).

Approval of the alien's petition for adjustment of status is not a foregone conclusion, however, and it has long been recognized that the INS may combat fraud by refusing to confer benefits where a marriage has been entered so as to circumvent the immigration laws. See Lutwak v. United States, 344 U.S. 604 (1953); 8 U.S.C. § 1154(c)(1994) ("no petition shall be approved . . . by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, . . . ."). Indeed, the INA vests the Attorney General with an affirmative duty to investigate the underlying circumstances of a claimed marital relationship before immigration benefits are conferred. See 8 U.S.C. § 1154(b)(1994).

Sabhari argues that the BIA's determination that he entered a sham marriage to Ms. Sherry is not supported by substantial evidence. Although it is true that there is some evidence in the administrative record of this case to suggest that the Sabharis'

marriage was bona fide,[8] on balance, the order of the BIA to the contrary, as affirmed by the district court, is supported by substantial evidence.

Evidence provided to the INS by members of Sabhari's family suggests that Sabhari tried a variety of means to obtain permanent residency in the United States but eventually settled on a scheme to marry an American woman and achieve residency thereby. Most persuasive to us is the consular report which details the statements of Sabhari's ex-wife Mohammed. Although Sabhari rebuts this report with documents suggesting that either the consular officer fabricated Mohammed's alleged statements or she recanted, under the totality of the circumstances such charges and recantations ring hollow. In addition, three of Sabhari's close family members — his sister, brother, and sister-in-law — each wrote unsolicited letters to the INS which support Mohammed's statements. Although the motives of Sabhari's brother and sister-in-law in writing such letters may be legitimately questioned,[9] no apparent ulterior motive exists to undermine the corroborating letter from Sabhari's sister.

Under these circumstances, the record before the BIA contained ample evidence upon which it could properly rely for its conclusion that Sabhari had failed to show that his marriage to Sherry was not entered for immigration purposes. Thus, because the BIA's order was supported by substantial evidence, we affirm the district court's order dismissing this action. The dismissal, however, is with prejudice.

## III.  CONCLUSION

---

[8]This evidence consists primarily of the Sabharis' unsworn testimonials which describe in detail the chronological and emotional history of their relationship, as well as certain financial records purporting to show their cohabitation and co-mingling of assets.

[9]At the time the letters were written, Sabhari and his brother were engaged in a business dispute and lawsuit thereto appertaining.

We affirm the summary judgment of dismissal but add that on remand the judgment show that the dismissal is with prejudice.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.