Kevin **MURPHY**, Administrator of the **ESTATE OF** Lawrence Martin **PAYNE**, Barbara Goren and Michael Payne, Darrell W. Darling and Karen A. Darling, Individually and as Co–Personal Representatives of the Estate of Adam Noel Darling, deceased, Kevin Murphy, Administrator of the Estate of Gail E. Dobert, **Plaintiffs**,

v.

**UNITED STATES of America, Department of the Air Force and Colonel Charles H. Wilcox II, Defendants.**

No. 3:03CV500 (MRK).

United States District Court, D. Connecticut.

Sept. 24, 2004.

Joel Thomas Faxon, Koskoff, Koskoff & Bieder, P.C., Bridgeport, CT, for Plaintiffs.

Lauren M. Nash, U.S. Attorney's Office, New Haven, CT, for Defendants.

### *MEMORANDUM OF DECISION*

KRAVITZ, District Judge.

Plaintiffs, representatives of the estates of Commerce Department employees

killed in a 1996 crash of a U.S. Air Force plane in Croatia, have brought this lawsuit seeking to compel the Department of the Air Force ("Air Force") to consider their damage claims under the Military Claims Act, 10 U.S.C. § 2733. Defendants have moved to dismiss this action, claiming that this Court lacks subject matter jurisdiction over Plaintiffs' claims.

This Court is deeply sympathetic to the plight of the families of these Commerce Department employees. Due to the negligence of their Government, they lost family members who were serving their country and the international community. That terrible tragedy has now been compounded by the Government's decision effectively to deny any compensation for those deaths, even though it has provided substantial compensation to other victims of the same accident. Regrettably, however, this Court lacks the power to assist these families. If they are to achieve the result they desire, they must take their case to Congress or back to the Air Force. Accordingly, the Court GRANTS Defendants' Motion to Dismiss [doc. # 10].

## I.

There is no dispute about the underlying facts of this case. On April 3, 1996, a U.S. Air Force CT–43A, carrying a delegation from the U.S. Department of Commerce, including Secretary of Commerce Ron Brown, on a good will mission to Bosnia, crashed into the side of a mountain and exploded. Compl. [doc. # 1], ¶¶ 9, 10. Commerce Department employees Lawrence Martin Payne, Adam Noel Darling, and Gail Dobert were part of the delegation, and they, along with everyone else on board, were killed in the crash. Id. ¶ 9. An Air Force investigation determined that the proximate cause of the crash was "a failure of command" within the Air Force, "aircrew error," and the pilots' use of "an improperly designed instrument approach procedure." Id. ¶ 11.

Plaintiffs are representatives of the estates of Mr. Payne, Mr. Darling, and Ms. Dobert. Id. ¶¶ 2–7. Following the crash, each of the Plaintiffs filed claims against the Air Force for recovery of death damages and loss of consortium pursuant to the Military Claims Act ("MCA"), 10 U.S.C. § 2733,[1] and its enabling regulations, 32 C.F.R. § 842.49(b). Id. ¶ 12. The Air Force considered Plaintiffs' claims under both the MCA and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(k). Def's Mem. in Supp. of Mot. to Dismiss [doc. # 11], at 3.

The Air Force concluded that none of Plaintiffs could be paid under the FTCA

---

1. The MCA provides, in pertinent part, as follows:

(a) Under such regulations as the Secretary concerned may prescribe, he, or,

subject to appeal to him, the Judge Advocate General of an armed force under his jurisdiction, or the Chief Counsel of the Coast Guard, as appropriate, if designated by him, may settle, and pay in an amount not more than $100,000, a claim against the United States for—

(1) damage to or loss of real property, including damage or loss incident to use and occupancy;

(2) damage to or loss of personal property, including property bailed to the United States and including registered or insured mail damaged, lost, or destroyed by a criminal act while in the possession of the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be; or

(3) personal injury or death;

either caused by a civilian officer or employee of that department, or the Coast Guard, or a member of the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be, acting within the scope of his employment, or otherwise incident to noncombat activities of that department, or the Coast Guard.

10 U.S.C. § 2733(a).

because that statute specifically prohibits payment of claims arising in a foreign country. *Id.* Plaintiffs do not contest that ruling. The Air Force also denied Plaintiffs' MCA claims. The Air Force did so on the basis of an Air Force regulation, 32 C.F.R. § 842.50(r),[2] and Air Force Instruction 51–501,[3] which provide that the exclusive remedy for Plaintiffs is the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8116(c).[4] Compl. [doc. # 1], ¶¶ 15, 16. Under FECA, Plaintiffs will be paid an average of $1,000 each for the deaths. Pl's Mem. in Opp'n to Mot. to Dismiss [doc. # 16], at 8. By contrast to the decisions regarding the Plaintiffs, the Air Force chose to allow claims under the MCA for other victims of the crash who were ineligible for FECA benefits, and, without disclosing the actual amounts awarded, this Court notes that the Air Force agreed to make sizeable payments under the MCA to the estates of the other victims.

It is the Air Force's denial of Plaintiffs' MCA claims that is the basis of this lawsuit. The August 18, 1998 letter from Col. Charles H. Wilcox, II, Director of Civil Law and Litigation for the Air Force, denying Plaintiffs' appeal within the Department of the Air Force thoroughly explains the Air Force's reasoning. The letter is worth quoting at length:

> As finally enacted, and as pertinent to the instant case, the plain-language of FECA's exclusive liability provision provides that where FECA will cover the injury at issue, no other recovery may be had by a Government employee, his representative or his next of kin, by way of an administrative proceeding under a Federal tort liability statute. By virtue of this language, a claimant under the MCA who seeks redress from an injury already covered by FECA, will be limited to FECA as the only means of recovery from the Government. This is because claims settlement under the MCA is an administrative proceeding, and the MCA itself is a Federal tort liability statute. As a tort liability statute, the MCA allocates losses arising out of human activities. It is considered "socially

---

**2.** The Air Force regulation provides, in pertinent part, that a claim is not payable if it "[i]s for the personal injury or death of a government employee for whom benefits are provided by the FECA." 32 C.F.R. § 842.50(r).

**3.** Air Force Instruction 51–501 provides, in pertinent part, as follows:

**3.6. Payable MCA Claims:** . . .
3.6.2. Noncombat Activity Claims. Claims caused by the noncombat activities of the U.S. Armed Forces, whether or not such injuries or damages arose out of negligent or wrongful acts or omissions, unless an exclusion listed in paragraph **3.7.** applies.
**3.7. MCA Exclusions.** Settlement authorities cannot pay claims described in paragraph **3.6.** under the MCA if the claim: . . .
3.7.9. Is for the personal injury or death of any person for whom benefits are available under the Federal Employees' Compensation Act, 5 U.S.C. 8101, and following.

Air Force Instruction 51–501, ¶¶ 3.6.–3.7.

**4.** FECA provides, in pertinent part, as follows:

> The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute. However, this subsection does not apply to a master or a member of a crew of a vessel.

5 U.S.C. § 8116(c).

unreasonable" to require individuals to bear the burden of injury arising out of the noncombat activities of the armed forces. *See Prosser and Keeton on the Law of Torts* 6, (5th ed.1984). *In the instant case, the burden of injury is covered by FECA, and FECA's exclusivity provision mandates non-payment of claims under the MCA where such claims are otherwise covered by FECA.*

Almost since the inception of the Air Force fifty years ago, the Air Force has consistently utilized the MCA as a payment authority of last resort, to cover those situations where no other provision of law provides for payment by the Government. Such utilization has been incident to the MCA's status as an "authorization" statute, authorizing the payment of certain claims but not requiring payment of any claim. *See Schneider v. United States,* 27 F.3d 1327, 1333 (8th Cir.1994), *cert denied,* 513 U.S. 1077, 115 S.Ct. 723, 130 L.Ed.2d 628 (1995); *Newman v. Soballe,* 871 F.2d 969, 973 (11th Cir.1989); *Collins v. United States,* 67 F.3d 284, 286 (Fed.Cir.1995); *Niedbala v. United States,* 37 Fed.Cl. 43, 46 (Fed. Cl.1996). The non-usage of the MCA for claims covered by FECA has helped ensure a uniformity of benefits among all Government civilian employees. No matter the circumstances under which they may be injured or killed, all civil service employees receive the same benefits for their injury or death: FECA. To allow payment under the MCA in the instant case would not only violate FECA's exclusivity provision, but also permit a double recovery from the Government not otherwise generally provided to other civil service employees and their families facing similar losses.

Wilcox Letter, at 2–3 (emphasis added).

Plaintiffs exhausted administrative remedies by filing an unsuccessful appeal with the administrative appellate authority pursuant to Air Force Instruction 51–501 and 32 C.F.R. § 842.52(a). Compl. [doc. # 1], ¶ 13. The appellate authority upheld the original decision denying Plaintiffs' claims on the basis of 32 C.F.R. § 842.50(r) and Air Force Instruction 51–501, ¶ 3.7.9. Def's Mem. in Supp. of Mot. to Dismiss [doc. # 11], at 4.

Plaintiffs filed suit on March 20, 2003, arguing that Defendants' actions were arbitrary and capricious and otherwise contrary to law. At base, Plaintiffs assert that Air Force Regulation § 842.50(r) and Air Force Instruction 51–501, ¶ 3.7.9—which provide that the Air Force will not pay a claim under the MCA claim if the claimant is eligible for benefits under FECA—rest on a misinterpretation of the FECA exclusivity provision, 5 U.S.C. § 8116(c). Pls' Supp. Mem. in Opp'n to Defs' Mot. to Dismiss [doc. # 34], at 2. Plaintiffs seek a declaratory judgment invalidating 32 C.F.R. § 842.50 and Air Force Instruction 51–501 and a writ of mandamus compelling Defendants to consider Plaintiffs' MCA claim without regard to that regulation and instruction. Compl. [doc. # 1], at 6. Defendants' Motion to Dismiss [doc. # 10] asserts that the Court lacks subject matter jurisdiction over the complaint under 10 U.S.C. § 2735, which provides that "[n]otwithstanding any other provision of law, the settlement of a claim under [the MCA] is final and conclusive."

## II.

■ "When considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998). However, the Second Circuit has emphasized that "[a] plaintiff asserting subject matter jurisdiction

has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). Thus, "the district court must look at the substance of the allegations to determine jurisdiction." *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1019 (2d Cir.1993).

## III.

 The first question this Court must resolve is whether it has subject matter jurisdiction over Plaintiffs' claims. Mem. in Supp. of Mot. to Dismiss [doc. # 11], at 1. Under 28 U.S.C. § 1331, district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." However, this general grant of federal question jurisdiction is subject to any statutes Congress may enact that preclude judicial review. *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) ("The obvious effect of [the 1976 modification to § 1331], subject only to preclusion-of-review statutes created or retained by Congress, is to confer jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate. We conclude that this amendment now largely undercuts the rationale for interpreting the APA as an independent jurisdictional provision."). Defendants claim that the MCA contains just such a preclusion of review provision.

The MCA authorizes the Secretary of each of the armed forces "[u]nder such regulations as the Secretary concerned may prescribe" to

> settle, and pay in an amount not more than $100,000, a claim against the United States for (1) damage to or loss of

real property, including damage or loss incident to use and occupancy; (2) damage to or loss of personal property, including property bailed to the United States and including registered or insured mail damaged, lost, or destroyed by a criminal act while in the possession of the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be; or (3) personal injury or death; either caused by a civilian officer or employee of that department, or the Coast Guard, or a member of the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be, acting within the scope of his employment, or otherwise incident to noncombat activities of that department, or the Coast Guard.

10 U.S.C. § 2733(a); *see* note 1 *supra*.[5] A claim "may be allowed" under the MCA "only if" it is presented in writing within two years after the claim accrues, the claim is not covered by 10 U.S.C. § 2734 or 28 U.S.C. § 2672, the claim is not for personal injury or death "incident to [the claimant's] service," the personal injury or death was not caused by a negligent act of the claimant, and the claim is substantiated in accordance with the Secretary's regulations. 10 U.S.C. § 2733(b). Under the MCA, a decision to disallow a claim, such as the Air Force's decisions in this case, constitutes a "settlement" of a claim. 10 U.S.C. § 2731 ("In this chapter, 'settle' means [to] consider, ascertain, adjust, determine, and dispose of a claim, whether by full or partial allowance or by disallowance.").

The provision of the MCA that is the focus of the present motion states that "[n]otwithstanding any other provision of law, the settlement of a claim under section 2733, 2734, 2734a, 2734b, or 2737 of

---

**5.** If the Secretary concludes that a claim in excess of $100,000 is meritorious, the Secretary may pay the claimant $100,000 and report any meritorious amount in excess of $100,000 to the Secretary of the Treasury for payment. 10 U.S.C. § 2733(d).

this title is final and conclusive." 10 U.S.C. § 2735. Defendants argue that § 2735 bars judicial review of the Secretary's decision to disallow Plaintiffs' claims. Plaintiffs counter that § 2735 was intended merely to preclude review of MCA decisions by other executive agencies or officials, and not by the courts.

The Court does not write on a blank slate in addressing this issue. In *Welch v. United States*, 446 F.Supp. 75 (D.Conn. 1978), the only reported case in this District and apparently in this Circuit addressing this issue, the former Chief Judge of this Court, T. Emmet Clarie, held that the MCA was intended only to preclude review of settlements by other federal executive agencies and officials and that § 2735 did not prohibit judicial review of the armed forces' decisions to allow or disallow MCA claims. *Id.* at 78. As Chief Judge Clarie explained, "Under this view, Congress, in enacting § 2735, was not precluding judicial review of agency construction and application of law, but only making the settlements of MCA claims final with respect to administrative review." *Id.*

*Welch* involved a sailor who was serving on active duty at the U.S. Naval Air Facility in Sigonella, Italy, when he "was struck by a United States Naval vehicle, which was negligently driven by a member of the United States Navy." *Id.* at 76. The sailor died of his injuries, and his estate filed a claim under the MCA. The Navy determined that the sailor was killed "incident to his service" and was thus barred from recovery under the MCA. As noted, Chief Judge Clarie decided that he had subject matter jurisdiction to review the Navy's disposition of the MCA claim, and he based that conclusion largely on his evaluation of the Senate Report which accompanied the 1972 amendments to the MCA: "[T]he legislative history suggests that the purpose of the 'final and conclusive' language in § 2735 is to prevent federal executive agencies and officials, such as the Comptroller General of the United States, from reviewing and possibly rejecting the settlements of MCA claims." *Id.* at 78. Nevertheless, Chief Judge Clarie concluded that the Secretary of the Navy had correctly applied the law in determining that the sailor's death was incident to service within the meaning of the MCA.

The reading of the MCA adopted in *Welch* has not proved persuasive to other courts that have considered the issue. In fact, it appears that courts considering this issue after *Welch* have unanimously rejected its holding and have concluded that § 2735 precludes judicial review of settlements of MCA claims. *See, e.g., Collins v. United States*, 67 F.3d 284 (Fed.Cir.1995); *Schneider v. United States*, 27 F.3d 1327 (8th Cir.1994); *Hata v. United States*, 23 F.3d 230 (9th Cir.1994); *Rodrigue v. United States*, 968 F.2d 1430 (1st Cir.1992); *Broadnax v. United States Army*, 710 F.2d 865 (D.C.Cir.1983); *Duncan v. West*, 965 F.Supp. 796 (E.D.Va.1997); *Minns v. United States*, 974 F.Supp. 500 (D.Md. 1997).[6] As one judge has noted, "the overwhelming weight of judicial authority, indeed seven circuits and numerous district courts, persuasively holds that § 2735 rebuts the presumption in favor of judicial review of an adverse administrative decision." *Duncan*, 965 F.Supp. at 800. These courts have concluded that the "final and conclusive" language of § 2735 is

---

**6.** Some of these courts were more explicit than others in rejecting the *Welch* approach. *See, e.g., Duncan*, 965 F.Supp. at 800 ("That interpretation [in *Welch* ] of § 2735 is unpersuasive in light of the MCA's plain and unam-
biguous language to the contrary."); *Minns*, 974 F.Supp. at 508 ("[The *Welch* decision] must be considered an aberration and no longer good law.").

sufficiently explicit to bar all judicial review of MCA settlements (whether allowances or disallowances), with the possible exception of constitutional claims. *See, e.g., Collins,* 67 F.3d at 287 ("We are convinced that when Congress included the finality provision in the Military Claims Act it intended that army claims would be considered and disposed of by the army and not by the courts."); *Schneider,* 27 F.3d at 1331–32 ("We conclude that the language of section 2735 clearly expresses Congress's intent to preclude judicial review and presents no ambiguity that would give rise to a presumption in favor of judicial review. . . . We now join our sister circuits in holding that section 2735 is unambiguous and that absent a constitutional claim the disallowance of a claim under the Military Claims Act is not subject to judicial review.").

Given that *Welch* has been uniformly disapproved, this Court believes that there is a need to revisit the issue afresh. In interpreting the language of the MCA, the Court is cognizant of the rule that judicial review is available unless clearly precluded. The Supreme Court has held that "only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review," *Abbott Labs. v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (internal quotations omitted), though courts will preclude review where Congress's intent to do so is clear. *Bowen v. Michigan Acad. of Family Physicians,* 476 U.S. 667, 671, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986) ("To preclude judicial review under this bill a statute, if not specific in withholding such review, must upon its face give clear and convincing evidence of an intent to withhold it."). In making this evaluation, the Supreme Court has instructed courts to "look to such evidence as 'specific language or specific legislative history that is a reliable indicator

of congressional intent,' or a specific congressional intent to preclude judicial review that is 'fairly discernible in the detail of the legislative scheme.' " *Traynor v. Turnage,* 485 U.S. 535, 542, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988) (quoting *Bowen,* 476 U.S. at 673, 106 S.Ct. 2133).

**The Statutory Language.** When examining a statute, courts must begin (and often must end) with the language of the statute itself. *See Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) ("As in any case of statutory construction, our analysis begins with 'the language of the statute.' And where the statutory language provides a clear answer, it ends there as well.") (quoting *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992)); *United States v. Gayle,* 342 F.3d 89, 92 (2d Cir.2003) ("Statutory construction begins with the plain text and, if that text is unambiguous, it usually ends there as well.").

As other courts have concluded, the language of § 2735 appears fairly clear and definitive. The statute provides: "Notwithstanding any other provision of law, the settlement of a claim under section 2733, 2734, 2734a, 2734b, or 2737 of this title is final and conclusive." 10 U.S.C. § 2735. On its face, the phrase "final and conclusive" suggests that Congress did not intend for settlement decisions to be reviewed. *See Hata,* 23 F.3d at 233 ("[T]he express language of the MCA provides clear and convincing evidence of legislative intent."); *Duncan,* 965 F.Supp. at 800 ("[T]he provision's plain and unambiguous language makes unmistakably clear that the Army's determination is final in all circumstances."). Furthermore, if full review were available, the addition of the phase "notwithstanding any other provision of law" would be meaningless. Yet courts are required to construe statutes so

as to give meaning to each portion of a statutory provision. *See, e.g., Connecticut v. United States Dep't of the Interior,* 228 F.3d 82, 88 (2d Cir.2000) ("[courts] are required to 'disfavor interpretations of statutes that would render language superfluous.' ") (quoting *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). The Eighth Circuit emphasized this point in *Schneider:*

> [S]ection 2735 is clear on its face. The statute does not merely say that the agency decision is "final," or "final and conclusive." Rather, the statute states that the Secretary's decision is "final and conclusive" "notwithstanding any other provision of law." To interpret the section as precluding only further administrative review would be to render meaningless the phrase "notwithstanding any other provision of law."

27 F.3d at 1331 (internal citations omitted). Accordingly, many courts have suggested that "the MCA could scarcely be clearer on its face." *Duncan,* 965 F.Supp. at 800.

In fact, however, the MCA could be a good deal clearer, as the provision in FECA that precludes judicial review demonstrates. Section 8128(b) of FECA provides as follows:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—*(1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.*

5 U.S.C. § 8128(b) (emphasis added). This door-closing language of FECA encompasses more than finality and conclusiveness; it goes one step further and explicitly bars judicial review. The Supreme Court has described the language of § 8128(b) as the model preclusion-of-review statute and as exemplifying the kind of language Congress uses when it "intends to bar judicial review altogether." *Lindahl v. Office of Pers. Mgmt.,* 470 U.S. 768, 779–80 n. 13, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985); *see also Staacke v. United States Sec. of Labor,* 841 F.2d 278, 281 (9th Cir.1988) ("Significantly, the Supreme Court has singled out section 8128(b) as a model preclusion-of-review statute.").

FECA's preclusion-of-review language is important not only because it is much more explicit than the MCA, but also because a number of the circuits have held that despite the seeming clarity of § 8128(b), "an implicit and narrow exception to the bar on judicial review exists for claims that the agency exceeded the scope of its delegated authority or violated a clear statutory mandate." *Hanauer v. Reich,* 82 F.3d 1304, 1307 (4th Cir.1996). These opinions rely on a host of Supreme Court opinions in other contexts that have held that even under statutes precluding judicial review of agency action, district courts "surely" have jurisdiction "to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act" though not "to 'review,' . . . . a decision of the Board made within its jurisdiction." *Leedom v. Kyne,* 358 U.S. 184, 188, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); *see also Oestereich v. Selective Serv. Sys. Local Bd. No. 11,* 393 U.S. 233, 238–39, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968) ("Since the exemption granted divinity students is plain and unequivocal and in no way contested here, and since the scope of the statutory delinquency concept is not broad enough to sustain a revocation of what Congress has granted as a statutory right, or sufficiently buttressed by legislative standards, we conclude that pre-induction judicial review is not precluded in cases of this type.").

Thus, the Fourth Circuit in *Hanauer* said this about FECA's preclusion-of-review provision: "[W]hen a claimant would have no other opportunity for meaningful and adequate judicial review of a claim that an agency exceeded its statutory authority, a district court may still consider such a claim, even if a statute precludes judicial review in general." *Hanauer*, 82 F.3d at 1309. The Ninth Circuit in *Staacke* held similarly: "Even where the statutory provision absolutely bars judicial review, however, there are two situations where review is nonetheless available: First, courts maintain jurisdiction to consider constitutional claims, and, second, jurisdiction exists where defendant is charged with violating a clear statutory mandate or prohibition." *Staacke*, 841 F.2d at 281 (internal citations omitted). And the Eighth Circuit in *Brumley v. United States Dep't of Labor*, 28 F.3d 746 (8th Cir.1994), stated that the "plain meaning of [§ 8128] shows Congressional intent 'to bar judicial review altogether.' However, it has been held that the preclusion-of-review statute cannot serve to immunize [the Department of Labor] from judicial review when its actions violate the Constitution or a clear statutory mandate." *Id.* at 747 (internal citations omitted).

The Second Circuit has not directly addressed the scope of judicial review available under FECA, but that court has approvingly noted in *dicta* that

[m]any sister circuits have held that § 8128(b) lacks preclusive effect on an employee's suit raising a constitutional challenge to an [Office of Workers Compensation Programs ("OWCP")] denial of FECA benefits. Additionally, some circuits have held that § 8128(b) does not bar jurisdiction even over a direct appeal by an employee denied benefits, so long as the employee argues in federal court that OWCP violated a clear statutory mandate under FECA.

*United States v. Sforza*, 326 F.3d 107, 111–12 (2d Cir.2003).

To be sure, not all circuits follow the approach of the Fourth, Eighth and Ninth Circuits to FECA. The First and Third Circuits have concluded that "there is nothing in the legislative history which would permit a departure from the unequivocal language of § 8128(b) to review such an asserted violation [of a clear statutory mandate], and that the decisions of our court preclude such a departure." *McDougal–Saddler v. Herman*, 184 F.3d 207, 212 (3d Cir.1999); *see also Paluca v. Secretary of Labor*, 813 F.2d 524, 525–27 (1st Cir.1987) ("We conclude that § 8128(b) does preclude judicial review of the merits of policy or rulemaking decisions on statutory grounds, but does not impede the adjudication by the courts of constitutional issues such as those raised by plaintiffs in this case" as that reading "would create the absurd result of permitting a court to strike down a policy statement of the Secretary, notwithstanding the court's inability to review any subsequent individual adjudications for conformance with its policy decision"). Since FECA's review provision is not before this Court, it need not resolve this issue and side with one group of circuits or the other. The point of this review of case law under § 8128(b) is merely to demonstrate that even when Congress uses far more explicit language in precluding review than it used in § 2735 of the MCA, many courts (though not all) still find implicit exceptions for judicial review of constitutional claims and alleged violations of clear statutory mandates.

Case law under FECA is not anomalous. Courts have adopted a similar approach when confronted with other statutes containing broad preclusion language similar to FECA and far more explicit than that

contained in the MCA. For example, the Export Administration Act of 1979, 50 U.S.C. § 2401 *et seq.* ("EAA"), contains a provision stating that the "Secretary's written decision shall be final *and is not subject to judicial review.*" 50 U.S.C. § 2412(e) (emphasis added). Nonetheless, the Ninth and D.C. Circuits have each allowed for some judicial review of decisions under the EAA:

> [C]ertain limited types of judicial review are available under the EAA despite the Act's seemingly absolute preclusion of review. First, colorable constitutional claims may be reviewed by the courts even when a statute otherwise precludes judicial review.... Second, we believe that claims that the Secretary acted in excess of his delegated authority under the EAA are also reviewable.

*United States v. Bozarov,* 974 F.2d 1037, 1044–45 (9th Cir.1992); *see also Dart v. United States,* 848 F.2d 217, 225 (D.C.Cir. 1988) ("We believe the EAA's finality clause permits review of agency actions that exceed statutory authority.").

Similarly, Congress granted the Office of Personnel Management authority to make decisions regarding questions of disability and dependency in the Civil Service retirement context and provided that "the decisions of the Office concerning these matters are final and conclusive and *are not subject to review.*" 5 U.S.C. § 8347(c) (emphasis added). Nonetheless, the Supreme Court in *Lindahl v. Office of Personnel Mgmt.,* 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985), held that "while the factual underpinnings of § 8347 disability determinations may not be judicially reviewed, such review is available to determine whether 'there has been a substantial departure from important procedural rights; a misconstruction of the governing legislation, or some like error going to the heart of the administrative determi-

nation.'" *Id.* at 791, 105 S.Ct. 1620 (quoting *Scroggins v. United States,* 184 Ct.Cl. 530, 397 F.2d 295, 297 (1968)) (internal citations and quotation marks omitted).

Analogously, § 7429 of the Internal Revenue Code provides that "any determination made by a district court under this section shall be final and conclusive *and shall not be reviewed by any other court.*" 26 U.S.C. § 7429(f) (emphasis added). Yet, the Seventh Circuit has ruled that

> although a district court's decision on the merits of the making and amount of the assessment is unreviewable, an appellate court does have jurisdiction to determine whether the district court acted within the scope of its statutory authority in dismissing a § 7429 action on procedural grounds. Thus, a district court's unauthorized acts are subject to review; its authorized, yet erroneous, acts are not.

*Hiley v. United States,* 807 F.2d 623, 627–28 (7th Cir.1986); *see also Schuster v. United States,* 765 F.2d 1047, 1049 (11th Cir.1985) ("where the appeal is based on procedural error—i.e., that the district court acted outside its authority, rather than acting erroneously within its authority—this court will review the decision to determine whether such error occurred."). Notably, the Second Circuit has followed the Seventh Circuit's approach to the scope of review available under § 7429(f)— a provision that, unlike the MCA, explicitly bars "review[ ] by any other court." *Wapnick v. United States,* 112 F.3d 74, 74 (2d Cir.1997) ("Following other circuits, we hold that this limitation applies only to decisions on the merits regarding the jeopardy assessment in question.") (citing *Hiley* and *Schuster* ).

As noted previously, several post-*Welch* decisions have held that the "final and conclusive" language of § 2735 clearly and unmistakably bars *all* judicial review.

Those holdings seem open to some question, however, in light of the fact that so many courts have allowed at least some judicial review even when confronted with review-precluding language that is far more explicit than that of § 2735.

**The MCA's Structure.** The structure of a statute as a whole can aid in the interpretation of particular statutory language. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."); *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir.2003) ("The text's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute."); *Auburn Housing Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir.2002) ("The meaning of a particular section in a statute can be understood in context with and by reference to the whole statutory scheme, by appreciating how sections relate to one another. In other words, the preferred meaning of a statutory provision is one that is consonant with the rest of the statute.").

 The MCA broadly provides that the relevant Secretaries "may settle, and pay" claims "under such regulations as the Secretary concerned may prescribe." 10 U.S.C. § 2735(a). Because of sovereign immunity, the Government ordinarily cannot be sued unless it explicitly authorizes such a suit. "It is well established that in any suit in which the United States is a defendant, a waiver of sovereign immunity with respect to the claim asserted is a prerequisite to subject matter jurisdiction." *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 374 (2d Cir.1999). The MCA does not waive the Govern-

ment's sovereign immunity, but instead merely authorizes the Secretary to settle claims (including disallowing claims) at his or her discretion and under such regulations as the Secretary may prescribe. As the Federal Circuit has noted: "We note that section 2733(a) is permissive and not mandatory. It provides that the Secretary 'may' settle and pay claims. Action by him in settling and paying claims is entirely discretionary and not mandatory." *Collins*, 67 F.3d at 286. Judicial review of a Secretary's decision to pay or not pay some or all of a claim would seem inconsistent with the broad discretion that Congress sought to confer on the Secretaries of the Armed Forces in the MCA.

The broad scope of that discretion is further confirmed by Congress's choice of the word "settle" to describe the Secretaries' resolution of claims and the fact that Congress imposed few strictures in the statute itself. Ordinarily, the word "settle" connotes voluntary action, not a mandatory dictate. And while § 2733(b) states that claims may be allowed "only if" certain criteria are met, 10 U.S.C. § 2733(b), no provision of the MCA *requires* the payment of any particular claim. Thus, the structure of the MCA suggests that if any judicial review is permissible in the face of the language of § 2735, the scope of that review should be quite narrow.

**The MCA's Legislative History.** The Court understands all too well that using legislative history to construe a statute is often akin to chasing a mirage. That said, authoritative legislative history on occasion can confirm an interpretation that is otherwise grounded in the text and structure of the act itself. *See, e.g., Chemical Mfrs. Ass'n v. Natural Resources Defense Council, Inc.*, 470 U.S. 116, 140, 105 S.Ct. 1102, 84 L.Ed.2d 90 (1985) (interpreting plain meaning of statutory text, then stating that the statute's legislative history

"demonstrates that Congress meant what it said, and it evidences a clear congressional intent."); *Gayle*, 342 F.3d at 93–94 ("Resort to authoritative legislative history may be justified where there is an open question as to the meaning of a word or phrase in a statute, or where a statute is silent on an issue of fundamental importance to its correct application. As a general matter, we may consider reliable legislative history where ... the statute is susceptible to divergent understandings and, equally important, where there exists authoritative legislative history that assists in discerning what Congress actually meant."). Moreover, the Supreme Court has expressly instructed courts to look to "specific legislative history that is a reliable indicator of congressional intent" in deciding whether Congress has sought to restrict access to judicial review. *Bowen*, 476 U.S. at 673, 106 S.Ct. 2133; *accord Traynor*, 485 U.S. at 542, 108 S.Ct. 1372. Therefore, it is appropriate to canvass the legislative history of the MCA.

Though changed and reenacted often over the years, the MCA finds its source in the Act of March 3, 1885, which allowed "for the settlement of the claims of officers and enlisted men of the Army for loss of private property destroyed in the military service of the United States" (hereinafter "Act of March 3, 1885"). Act of March 3, 1885, ch. 335, 23 Stat. 350, 350 (1885). The Act of March 3, 1885 provided as follows:

> That the proper accounting officers of the Treasury be, and they are hereby, authorized and directed to examine into, ascertain, and determine the value of the private property belonging to officers and enlisted men in the military service of the United States which has been, or may hereafter be, lost or destroyed in the military service, under the following circumstances: ... And the amount of such loss so ascertained and determined shall be paid out of any money in the Treasury not otherwise appropriated, and shall be in full for all such loss or damage.

*Id.*

In language that is relevant to the inquiry before this Court, the Act of March 3, 1885 further provided "that any claim which shall be presented and acted on under authority of this act shall be held as finally determined, and shall never thereafter be reopened or considered." *Id.* In 1919, the Supreme Court had occasion to construe this language and held that it barred judicial review of determinations made under the Act. *United States v. Babcock*, 250 U.S. 328, 330–31, 39 S.Ct. 464, 63 L.Ed. 1011 (1919). Writing for a unanimous Court, Justice Brandeis concluded that "[t]hese words express clearly the intention to confer upon the Treasury Department exclusive jurisdiction and to make its decision final." *Id.* The Court further held that "the United States, when it creates rights in individuals against itself, is under no obligation to provide a remedy through the courts," and that "where a statute creates a right and provides a special remedy, that remedy is exclusive." *Id.*

In drafting later iterations of the MCA, Congress is presumed to have been aware of *Babcock's* holding. As the Supreme Court explained in *Lindahl*:

> Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change. So too, where, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute.

*Lindahl,* 470 U.S. at 783 n. 15, 105 S.Ct. 1620 (citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *NLRB v. Gullett Gin Co.,* 340 U.S. 361, 366, 71 S.Ct. 337, 95 L.Ed. 337 (1951); *National Lead Co. v. United States,* 252 U.S. 140, 147, 40 S.Ct. 237, 64 L.Ed. 496 (1920); 2A C. Sands, *Sutherland on Statutory Construction* § 49.09 (4th ed.1973)). Nothing in the language of the MCA or its legislative history suggests that when Congress enacted the modern successors to the Act of March 3, 1885, Congress sought to override or otherwise depart from the Supreme Court's decision in *Babcock.*

The version of the MCA we have today was enacted in 1945 as the Military Personnel Claims Act. *See* Military Personnel Claims Act of 1945, 59 Stat. 225, 225–26 (May 29, 1945). The 1945 version of the statute stated that: "Any such settlement made by the Secretary of War, or his designee, under the authority of this Act and such regulations as he may prescribe hereunder, shall be final and conclusive for all purposes, notwithstanding any other provision of law to the contrary." 59 Stat. at 225. The House Report on the statute states that the

> purpose of the proposed legislation is to provide a single, clear, definite, and workable statute for the settlement of claims of military personnel and civilian employees of the War Department or of the Army for the loss of their personal property incurred while in the service and to repeal certain statutes which have been found to be obsolete or un-

workable and not appropriate to present conditions.

H.R.Rep. No. 79–237, at 1 (1945). The House Report also incorporates a report by the War Department, which includes a letter from Acting Secretary of War Robert P. Patterson describing the above-noted preclusion clause. The House Report quotes Secretary Patterson's letter as follows:

> Attention is invited to the provision that any settlement made by the Secretary of War, or his designee, under the authority of the proposed legislation and such regulations as he may prescribe thereunder, will be final and conclusive for all purposes, notwithstanding any other provision of law to the contrary. *In the absence of fraud or mistake in mathematical calculations, the findings of fact, conclusions of law, and the decision of the Secretary of War, or his designee, upon the merits of any claim, would not be subject to review by any other administrative or accounting officer, employee, or agent of the United States.*

*Id.* at 4 (emphasis added). The House Report repeats this same language verbatim in a portion of the incorporated report by the War Department entitled "The Purpose of the Proposed Legislation." *Id.* at 6.

The House Report describing the origin of the language ultimately found in § 2735 thus suggests that review would be permitted in cases of "fraud or mistake in mathematical calculation."[7] More impor-

7. The Government asserts that this statement from the House Report only shows that Congress contemplated an internal administrative review for fraud or mathematical error (not judicial review), and the Government points out that such review is available under Air Force regulations, which provide:

(a) A claimant may appeal the final denial of the claim. The claimant sends the request, in writing, to the settlement authority within a reasonable time following the final denial. Sixty days is considered a reasonable time, but the settlement authority may waive the time limit for good cause.

tantly, the stated purpose of § 2735 is said to be to prevent further administrative review, with no mention of judicial review.

In 1956, the statute was amended to include the form of § 2735 we have today. The phrase "final and conclusive for all purposes" became "final and conclusive." 10 U.S.C. § 2735. The Statutory Notes in the United States Code state that the words "for all purposes" were omitted as surplusage. A House Report also states that the new language should be read no differently from how it had been read before the change. House of Representatives Comm. on the Judiciary, 84th Cong., Report to accompany H.R. 7049, *reprinted in* 1956 U.S.C.C.A.N. 4613, 4620 (cited in *Rodrigue,* 968 F.2d at 1433).

The MCA was amended again in 1964, extending "to other agencies of the Government the authority now possessed by the military departments, . . . with respect to the settlement of claims." S.Rep. No. 1423, at 3408 (1964). The Senate Report on the 1964 amendments includes a letter from the Assistant Secretary of the Interior to the Judiciary Committee recommending passage of the bill and noting that "[n]o provision is made for appeal to the courts. On the contrary, the bill provides that the administrative settlement of a claim is final and conclusive." *Id.* at 3414–15.

The statute was further amended in 1972, adding to § 2735 references to §§ 2734a, 2734b, and 2737. *See* S.Rep. No. 92–1056, at 1 (Aug. 16, 1972). The Senate Report for the 1972 amendments states in the section entitled "Purpose of the Legislation" that "the proposed legisla-tion would be consistent with the cited general policy of preventing other agencies of the Government from reviewing and reversing actions on claim settlements of agencies specifically authorized to settle and pay certain claims." *Id.* at 4. Again, Congress's emphasis appears to be on precluding other administrative agencies from reviewing MCA settlements.

**The Scope of Judicial Review Available Under the MCA.** In summary, then, the statutory language, judicial precedent under the MCA and other similar statutes, the structure of the MCA, and its legislative history provide some mixed directions. The language "final and conclusive" and "notwithstanding any other provision of law" seem clear enough, and on their face would suggest that all judicial review is foreclosed. Yet, many courts have construed statutes (like FECA) that have far more explicit door-closing language than the MCA to allow for at least some, albeit limited, judicial review. The structure of the MCA suggests that Congress granted the Secretaries broad discretion in determining how to settle claims and, as Justice Brandeis noted long ago in *Babcock,* judicial review of such settlements would seem inconsistent with that broad discretion. Yet, the legislative history of the modern-day versions of § 2735 suggests that its drafters may well have been principally concerned about precluding review by other executive branch officials and agencies, and that, at the very least, this provision was not drafted with the primary intent of precluding *all* judicial review.

(b) Upon receipt of the appeal, the original settlement authority reviews the appeal.
(c) Where the settlement authority does not reach a final agreement on an appealed claim, he or she sends the entire claim file to the next higher settlement authority, who is the appellate authority for that claim.

(d) The decision of the appellate authority is the final administrative action on the claim.
32 C.F.R. § 842.52. As noted *supra,* Plaintiffs availed themselves of this internal review, process, which resulted in the denial letter from Colonel Wilcox quoted earlier.

■ Faced with the foregoing evidence of Congress's intent and without definitive guidance from the Second Circuit, the Court concludes that the best approach is to construe the MCA in the same way that a majority of courts have construed FECA—that is, to hold that the MCA precludes all judicial review except for constitutional claims and claims involving violations of a clear statutory mandate contained in the MCA itself. In this regard, the Court notes that § 2735, the MCA's preclusion of review section, was enacted by the same Congress that enacted FECA's review precluding provision. *Compare* Federal Employee Compensation Act, ch. 328, 59 Stat. 503, 504 (July 28, 1945) *with* Military Personnel Claims Act of 1945, ch. 135, 59 Stat. 225, 225–26 (May 29, 1945). In those circumstances, it would be odd indeed to construe the MCA's less clear language as barring more judicial review than FECA's explicit ban on judicial review.

Construing the MCA to allow judicial review of claimed constitutional violations should not be controversial. As noted earlier, a number of courts have stated in *dicta* that § 2735 permits review of constitutional claims, and courts have unanimously held that judicial review of constitutional claims is available under FECA in the teeth of rather explicit statutory language barring judicial review. As the Seventh Circuit has observed, "[t]he circuits are in agreement: door-closing statutes do not, unless Congress expressly provides, close the door to constitutional claims, provided that the claim is colorable and the claimant is seeking only a new hearing or other process rather than a direct award of money by the district court." *Czerkies v. United States Dep't of Labor,* 73 F.3d 1435, 1439 (7th Cir.1996) (en banc). The Supreme Court made this same point in the context of a review precluding provision in the National Security Act:

We do not think § 102(c) may be read to exclude review of constitutional claims. We emphasized in *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), that where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear. *Id.* at 373–74, 94 S.Ct. 1160. In *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), we reaffirmed that view. We require this heightened showing in part to avoid the "serious constitutional question" that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.

*Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988); *see also Czerkies,* 73 F.3d at 1441 ("Each statute must stand on its own two feet, but each is informed by the presumption already mentioned against slamming the judicial door in the face of constitutional claims."). This much is clear from the language of § 2735: it certainly does not explicitly bar judicial review of constitutional claims. The Court thus concludes that § 2735 does not bar review constitutional claims and accordingly, that the Court has subject matter jurisdiction to consider Plaintiffs' constitutional claims.

Construing § 2735 to permit judicial review of claimed violations of a clear statutory mandate is a more controversial proposition. Except for *Welch,* none of the courts to consider the MCA has so held, and as noted earlier, courts construing FECA have somewhat split on this question, though the majority of circuits considering the issue has found such review to be available under FECA.

The rationale for allowing judicial review in the context of a violation of a clear statutory mandate stems in part from the Supreme Court's decision in *Oestereich v.*

*Selective Serv. Sys. Local Bd. No. 11,* 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), in which the Court construed § 10(b)(3) of the Military Selective Service Act of 1967. Section 10(b)(3) provided as follows:

No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: Provided, That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant.

81 Stat. 100, 104 (1967) (cited in *Oestereich,* 393 U.S. at 235, 89 S.Ct. 414). Reviewing that language in *Oestereich,* the Supreme Court held as follows:

The case we decide today involves a clear departure by the Board from its statutory mandate. To hold that a person deprived of his statutory exemption in such a blatantly lawless manner must either be inducted and raise his protest through habeas corpus or defy induction and defend his refusal in a criminal prosecution is to construe the Act with unnecessary harshness.... Our construction leaves § 10(b)(3) unimpaired in the normal operations of the Act.

*Id.* at 237–38, 89 S.Ct. 414. Therefore, contrary to the language of § 10(b)(3), the Court concluded that "judicial review is not precluded in cases of this type." *Id.* at 239, 89 S.Ct. 414.

The Supreme Court took a similar approach in *Leedom v. Kyne,* 358 U.S. 184,

79 S.Ct. 180, 3 L.Ed.2d 210 (1958), in which the National Labor Relations Board certified a collective bargaining unit, but the certification was improper under the National Labor Relations Act. *Id.* at 185–86, 79 S.Ct. 180. The Supreme Court stated that even though an appeal from such a certification determination would ordinary not be subject to judicial review, the case presented "an attempted exercise of power that had been specifically withheld. It deprived the professional employees of a 'right' assured to them by Congress. Surely, in these circumstances, a Federal District Court has jurisdiction of an original suit to prevent deprivation of a right so given." *Id.* at 189, 79 S.Ct. 180. The Court thus found jurisdiction "to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act." *Id.* at 188, 79 S.Ct. 180.

More recently, the Supreme Court distinguished *Kyne* in reaching a contrary conclusion in *Board of Governors v. MCorp Financial, Inc.,* 502 U.S. 32, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991). In that case, the Supreme Court was called upon to construe a provision of the Financial Institutions Supervisory Act of 1966 ("FISA"), which provided as follows:

Except as otherwise provided in this section no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order.

12 U.S.C. § 1818(I)(1). The Court reversed a Fifth Circuit ruling that allowed for judicial review in a case alleging a violation of clear statutory authority. *MCorp,* 502 U.S. at 44–45, 112 S.Ct. 459. The Supreme Court distinguished *MCorp* from *Kyne* in two ways. First, in *Kyne,* the plaintiff would have had no opportunity

to vindicate its statutory rights without recourse to the courts, whereas in *MCorp*, FISA "expressly provide[d] MCorp with a meaningful and adequate opportunity for judicial review of the validity of the source of strength regulation." *Id.* at 43, 112 S.Ct. 459. Second, FISA is considerably more explicit in precluding judicial review than the statute involved in *Kyne*, which only implied preclusion of review by silence. *Id.* at 44, 112 S.Ct. 459. Accordingly, the Supreme Court held that FISA "provides us with clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin the Board's ongoing administrative proceedings." *Id.*

As noted earlier, in *Hanauer v. Reich, supra*, the Fourth Circuit held that "an implicit and narrow exception to the bar on judicial review exists for claims that the agency exceeded the scope of its delegated authority or violated a clear statutory mandate." *Hanauer*, 82 F.3d at 1307. In commenting on *MCorp 's* impact on this "implicit and narrow exception," the Fourth Circuit observed as follows:

> Like the statutory scheme at issue in *MCorp*, § 8128(b) contains an unambiguous preclusion of judicial review. But unlike the statutory scheme at issue in *MCorp*, the statutory scheme at issue here does not provide for judicial review of a final order of the Secretary. We consider this distinction to be critical. Acceptance of the Secretary's argument that § 8128(b) precludes district courts from considering claims that the Secretary violated a clear statutory mandate would, in the words of the Supreme Court, "wholly deprive claimants of a meaningful and adequate means of vindicating [their] statutory rights." *See MCorp*, 502 U.S. at 43, 112 S.Ct. 459. Mindful that we "cannot lightly infer that Congress does not intend judicial protection of rights it confers against

agency action taken in excess of delegated powers," *Kyne*, 358 U.S. at 190, 79 S.Ct. 180, we conclude that *MCorp* does not compel us to hold that § 8128(b) precludes district courts ·from considering claims that the Secretary violated a clear statutory mandate.

*Id.* at 1308–09; *see also Brumley*, 28 F.3d at 747; *Staacke*, 841 F.2d at 281. The Court finds the Fourth Circuit's analysis of FECA directly applicable to the MCA. In fact, at oral argument the Government appeared to concede that § 2735 does not preclude review of a violation of a clear statutory mandate. Transcript [doc. # 28], at 14 ("I think it's a fair reading of the judicial precedent that it could be reviewed as a separate violation of the statutory authority, apart from a constitutional claim. I think that's a fair reading of the case law.").

To construe § 2735 as precluding review of claims founded on a violation of a clear statutory mandate contained in the MCA would, in the words of the Supreme Court in *MCorp*, "wholly deprive claimants of a meaningful and adequate means of vindicating [their] statutory rights." 502 U.S. at 42, 112 S.Ct. 459. Moreover, the review precluding language of the MCA is far less explicit than that involved in *MCorp*. Indeed, in *Lindahl*, the Supreme Court stated that "when Congress intends to bar judicial review altogether, it typically employs language far more unambiguous and comprehensive than that set forth in § 8347," a statute which provided that "the decisions of the Office concerning these matters are final and conclusive and are not subject to review." 5 U.S.C. § 8347(c); *Lindahl*, 470 U.S. at 779–80, 105 S.Ct. 1620. The "final and conclusive" language of § 8347 is nearly identical to that of § 2735, except that § 8347—unlike § 2735—also contains the injunction that the Office's decisions "are not subject to

review." Finally, as is evident from the discussion of Plaintiffs' claims that follows, permitting court review of claimed violations of a clear statutory mandate will not be unduly disruptive or intrusive since the MCA itself contains few clear statutory mandates.

Plaintiffs argue that, in addition to review for constitutional claims and violations of a clear statutory mandate, § 2735 should also be construed to allow for "some like error 'going to the heart of the administrative determination,'" a form of judicial review that has come to be known as "*Scroggins* review." *See Lindahl,* 470 U.S. at 791, 105 S.Ct. 1620 (quoting *Scroggins v. United States,* 184 Ct.Cl. 530, 397 F.2d 295, 297 (1968)); *see* Pls' Supp. Mem. in Opp'n to Defs' Mot. to Dismiss [doc. # 34], at 10–12. *Scroggins* and *Lindahl* both involved challenges to disability classification decisions by the Federal Office of Personnel Management. The statute in question—5 U.S.C. § 8347—was amended in 1980, twelve years after the *Scroggins* decision. The Supreme Court concluded in *Lindahl* that

> the fact that Congress amended § 8347 in 1980 without explicitly repealing the established *Scroggins* doctrine itself gives rise to a presumption that Congress intended to embody *Scroggins* in the amended version of § 8347. We need not rely on the bare force of this presumption here, however, because the legislative history of the 1980 amendment demonstrates that Congress was indeed well aware of the *Scroggins* standard, amended § 8347 on its under-

standing that *Scroggins* applied to judicial review of disability retirement decisions generally, and intended that *Scroggins* review continue except to the extent augmented by the more exacting standards of § 8347(d)(2).

*Lindahl,* 470 U.S. at 782–83, 105 S.Ct. 1620.

Given the specificity of the basis for *Lindahl's* finding that *Scroggins* review was available in the context of § 8347(d)(2), the absence of any similar legislative history under the MCA, the absence of any other similar context in which courts have found *Scroggins* review to be available, and the broad discretion accorded the Secretaries of the Armed Forces in the MCA, the Court declines Plaintiffs' invitation to extend judicial review under the MCA to errors "going to the heart of the administrative determination." [8]

Accordingly, the Court holds that under 10 U.S.C. § 2735, the Court lacks subject matter jurisdiction to review the Secretary's decision to deny Plaintiffs' MCA claims, except for Plaintiffs' claims that Defendants violated Plaintiffs' constitutional rights or violated a clear statutory mandate contained in the MCA itself.

## IV.

Plaintiffs argue that two separate constitutional violations justify overturning the Secretary's decision. First, Plaintiffs assert that the Secretary's misinterpretation of FECA's exclusivity provision violates separation of powers principles. Pls' Supp. Mem. in Opp'n to Defs' Mot. to

---

**8.** Plaintiffs are correct that *Broadnax* did raise the possibility of *Scroggins* review in the MCA context, but the language in *Broadnax* is equivocal and is *dicta,* and no subsequent court has adopted it. *See Broadnax,* 710 F.2d at 867 ("Although § 2735 may well permit some limited review, for example where there has been a substantial departure from impor-

tant procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination, such review is not implicated under the circumstances of this case.") (internal citations and quotations omitted). Nor will this Court do so.

Dismiss [doc. # 34], at 1–7. Second, Plaintiffs allege that the payment of MCA benefits to others killed in the crash gives Plaintiffs a property interest in MCA benefits and that the Secretary's denial of those benefits constitutes a denial of due process. *Id.* at 8–10. The Court rejects both arguments. The Secretary did not violate the Constitution as Plaintiffs allege.

■ **Separation of Powers.** As noted earlier, an Air Force Regulation, 32 C.F.R. § 842.50(r),[9] provides that claims for personal injury or death of a government employee for whom benefits are provided by FECA are not payable under the MCA. Plaintiffs assert that this regulation rests on a misinterpretation of FECA's exclusivity provision, 5 U.S.C. § 8116(c). Section 8116(c) makes liability under FECA exclusive and instead of all other liability of the United States under "a worker's compensation statute or Federal tort liability act."[10] Pls' Supp. Mem. in Opp'n to Defs' Mot. to Dismiss [doc. # 34], at 2. Plaintiffs further argue that this error in construing FECA's exclusivity provision is of constitutional dimensions and violates separation of powers principles because by supposedly exceeding the executive branch's authority under FECA, Defendants have usurped

the role of Congress. *Id.* at 6. In support of this argument, Plaintiffs cite *Wolke v. Dreadnought Marine*, 954 F.Supp. 1133 (E.D.Va.1997) and *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

The Court need not decide at this time whether the Secretary's construction of FECA's exclusivity provision is correct or not because it is clear to the Court that even if the Secretary's interpretation was in error, such an error would not be sufficient to violate separation of powers principles. For "an incorrect application of the law [ ] by an agency does not violate the Constitution.... To hold otherwise would place all administrative decisions in the constitutional law classification. There is a substantial difference between a mistake and [a violation of the Constitution]." *Rodrigue*, 968 F.2d at 1435.

*Wolke* involved a situation where the agency's regulation was "manifestly contrary" to the statute, and was thus impermissible under a *Chevron* analysis. *Wolke*, 954 F.Supp. at 1137 n. 6. This case is nothing like the situation presented in *Wolke*. Plaintiffs have made no argument that the Secretary violated any provision of the MCA in barring those eligible for

---

**9.** The regulation provides, in pertinent part, as follows:

Exclusions listed in § 842.50(a) through (1) of this part, are based on the wording of 28 U.S.C. 2680. The remainder are based either on statute or court decisions. The interpretation of these exclusions is a Federal question decided under Federal law. Where State law differs with Federal law, Federal law prevails. A claim is not payable under this subpart if it: ... (r) Is for the personal injury or death of a government employee for who benefits are provided by the FECA.

32 C.F.R. 842.50.

**10.** Section 8116(c) states as follows:

The liability of the United States or an instrumentality thereof under this subchapter

or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute. However, this subsection does not apply to a master or a member of a crew of a vessel.

5 U.S.C. § 8116(c).

FECA benefits from collecting under the MCA. And indeed Plaintiffs could not make such an argument, as the MCA accords the Secretary extraordinary discretion in determining eligibility for MCA benefits and permits the Secretary to settle claims "under such regulations as the Secretary concerned may prescribe." *See* 10 U.S.C. § 2733(a). *Wolke* stated that "[d]eference to regulations protects the separation of powers in most cases. But in this case, the executive branch has exceeded its authority and usurped Congress's role." *Id.* By contrast to *Wolke*, this Court finds that the Air Force did not exceed the wide authority accorded it in the MCA and did not usurp Congress's role.

The Court's conclusion in that respect is supported, not undermined, by *Chevron.* In *Chevron*, the Supreme Court held that

> [w]hen a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail. In such a case, federal judges—who have no constituency—have a duty to respect legitimate policy choices made by those who do.

*Chevron*, 467 U.S. at 866, 104 S.Ct. 2778. Here, the MCA itself places essentially no limits on the Secretary's authority to deny a claim and very few limits on his authority to allow a claim. A challenge to the Secretary's decisions under the MCA could thus only be a challenge to the "wisdom of the agency's policies," a challenge that, in the words of *Chevron*, "must fail." *Id.*

Relatedly, Plaintiffs also claim that "if Congress truly intended that the Secretary of the Air Force have complete discretion to grant claims of certain claimants but deny those of similarly situated claimants, or otherwise engage in arbitrary and ca-

pricious behavior in the granting of awards, then such delegation of Congress's tort claim settlement authority to the executive would be invalid" under the nondelegation doctrine. Pls' Supp. Mem. in Opp'n to Defs' Mot. to Dismiss [doc. # 34], at 23. Plaintiffs' argument is essentially that if the Secretary's discretion under the MCA is as unfettered as Defendants assert, the MCA represents a delegation of legislative power to the Secretary without an "intelligible principle" in violation of *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935), and *Panama Refining Co. v. Ryan*, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935).

As an initial matter, the Court notes that the extent to which the non-delegation doctrine remains governing law is in question, insofar as no law has been found unconstitutional under its provisions in 70 years. *Cf. Indus. Union Dep't v. Am. Petroleum Inst.* (the *Benzene* case), 448 U.S. 607, 686–87, 100 S.Ct. 2844, 65 L.Ed.2d 1010 (1980) (Rehnquist, J., concurring) ("We ought not to shy away from our judicial duty to invalidate unconstitutional delegations of legislative authority solely out of concern that we should thereby reinvigorate discredited constitutional doctrines of the pre-New Deal era."). In any event, the Court does not believe that Congress's grant of power to the Secretaries of the Armed Forces to reach individual settlements with claimants constitutes an improper delegation of the legislative power.

Accordingly, the Court rejects Plaintiffs' argument that in disallowing Plaintiffs' MCA claims, Defendants violated either separation of powers principles or the nondelegation doctrine.

■ **Due Process.** Plaintiffs also argue that "the Air Force is required to pay

Plaintiffs because it has paid others who were killed in the crash." Pls' Supp. Mem. in Opp'n to Defs' Mot. to Dismiss [doc. # 34], at 8. This argument is ostensibly founded on the assertion that the payment to other claimants gave Plaintiffs property interests in their MCA claims, and that it would thus be arbitrary and capricious and a violation of due process to deny Plaintiffs' MCA claims when Defendants have allowed compensation to other victims of the same crash. *Id.* Plaintiffs cite *Tarpeh–Doe v. United States,* 904 F.2d 719 (D.C.Cir.1990), in support of this argument, and specifically rely on *Tarpeh–Doe's* language that a property interest could arise "based upon the consistent practice of a decisional body" even in the absence of a specific policy. *Id.* at 724. Plaintiffs argue that the Air Force's "consistent practice" is revealed through its payment of the claims of the other victims of the Bosnia crash.

This argument is also without merit. *Tarpeh–Doe* held that "one claiming the right to certain procedures under the Constitution must have been deprived of an interest grounded in a legitimate expectation" and that "[i]t is possible, of course, for a legitimate expectation to arise based upon the consistent practice of a decisional body—even in the absence of express regulatory language or in the face of ostensibly contradictory agency policy statements." *Id.* at 723–24. Along these lines, the Second Circuit has stated that

> [a] cognizable property interest is more than just a "unilateral expectation"; it is a "legitimate claim of entitlement." Although the Constitution

protects property interests, it does not create them. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

*Furlong v. Shalala,* 156 F.3d 384, 393 (2d Cir.1998) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

It is undisputed that the MCA itself creates no property interest in, or entitlement to, the payment of claims because of the broad discretion the statute gives the Secretary to allow or disallow claims and to make payments as the Secretary sees fit under such regulations as the Secretary may adopt. Therefore, for a property interest to arise in such circumstances, it must come about, in the language of the cases quoted above, through "consistent practice" in the words of the D.C. Circuit or an "understanding that secures certain benefits," in the words of the Second Circuit. Yet, the Secretary's payment of the claims of other victims of the Bosnia crash in no way reflects a consistent practice of allowing such claims or creates an understanding securing benefits to victims of that crash. For the Secretary determined that the other victims of the crash were not similarly situated to Plaintiffs because Plaintiffs were covered by FECA and the other victims were not.[11]

Indeed, if there is a consistent practice at all, it is—as revealed by the long-standing Air Force Regulation § 842.50(r), and

---

11. This point was acknowledged at oral argument by Plaintiffs' counsel. Transcript [doc. # 28], at 35 (answering "I believe that's correct," to the Court's question, "I take it they found against the other people because the other people were not similarly situated in the sense that … the other people were found

not to be covered or to have potentially eligible claims under FECA and therefore, they had no other recourse and therefore, MCA was their only recourse and they didn't fall within the exception for people who had FECA claims. Am I wrong on that?").

Air Force Instruction 51–501—to *deny* MCA benefits to claimants who were eligible for FECA benefits. Therefore, even taking the *Tarpeh–Doe* language that Plaintiffs rely on at face value, Plaintiffs fail to make a claim that they have a property interest in MCA benefits. As a consequence, Plaintiffs' due process claim is without merit.

Having considered Plaintiffs' claimed constitutional violations, the Court concludes that there is no basis to overturn the Secretary's decision denying MCA benefits to Plaintiffs.

## V.

■ Whether the Secretary violated a clear statutory mandate in denying MCA benefits to claimants who are eligible for FECA benefits presents a question similar to Plaintiffs' first constitutional argument, discussed above. Plaintiffs make no claim that the Air Force violated any provision of the MCA; rather, their argument is that Air Force Regulation § 842.50(r) and Air Force Instruction 51–501 are contrary to FECA (not the MCA), since FECA exclusivity is limited to claims "under a workmen's compensation statute or under a Federal tort liability statute," 5 U.S.C. § 8116(c), and the MCA is neither. As noted above, however, even assuming the Secretary's interpretation of FECA is wrong, the Secretary's interpretation of FECA would not constitute a violation of any clear statutory mandate in the MCA itself.

The MCA is an unusual statute. It provides almost no limit to the Secretary's discretion in granting or denying claims:

> Under such regulations as the Secretary concerned may prescribe, he, or, subject to appeal to him, the Judge Advocate General of an armed force under his jurisdiction, or the Chief Counsel of the Coast Guard, as appropriate, if designat-

ed by him, may settle, and pay in an amount not more than $100,000, a claim against the United States.

10 U.S.C. § 2733(a). The Secretary may prescribe regulations, and he or she may settle claims. *See also* 10 U.S.C. § 2733(d) ("If the Secretary concerned considers that a claim in excess of $100,000 is meritorious, and the claim otherwise is payable under this section, the Secretary may pay the claimant $100,000 and report any meritorious amount in excess of $100,000 to the Secretary of the Treasury for payment under section 1304 of title 31.").

No provision of the MCA requires that any claim be accepted; the statute merely authorizes the Secretary to settle claims that the Secretary finds are meritorious. *See, e.g., Newman v. Soballe*, 871 F.2d 969, 973 (11th Cir.1989) ("The Military Claims Act is merely an authorization statute. It confers no 'cause of action' to the plaintiff."), *overruled on other grounds by United States v. Smith*, 499 U.S. 160, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991). As the Federal Circuit has noted, the MCA "is permissive and not mandatory. It provides that the Secretary 'may' settle and pay claims. Action by him in settling and paying claims is entirely discretionary and not mandatory." *Collins*, 67 F.3d at 286. In view of the broad language of the MCA and the expansive discretion it provides the Secretary, the Court cannot conclude that the policy choice made by the Air Force—that claimants who are eligible to receive FECA benefits should not receive payments under the MCA—violates any clear mandate of the MCA, regardless whether the Air Force has properly construed FECA or not.

The Court's conclusion in this regard is regrettable, because the Court agrees with Plaintiffs that the Air Force's construction of FECA's exclusivity provision is questionable. Though courts often defer to

agency construction of statutes under *Chevron,* that decision's rule of deference does not apply when an agency interprets another agency's statute. *Citicorp v. Bd. of Governors of Fed. Reserve Sys.,* 936 F.2d 66, 75 (2d Cir.1991) ("We recognize that courts are not obliged to defer to interpretations of a statute made by agencies not responsible for its administration."). This Court thus need not defer to the Air Force in its interpretation of FECA.[12] Furthermore, the Court notes that there is no evidence that the Department of Labor—which would receive deference from this Court in interpreting FECA and which has expertise in construing that statute—has ever interpreted § 8116(c) to bar MCA claims. Worse yet, there is no evidence that the Air Force has ever asked the Department of Labor for its views on the subject or for an advisory ruling on the proper interpretation of the FECA exclusivity provision.

The FECA exclusivity provision states that relief under FECA is exclusive of relief under "a workmen's compensation statute or under a Federal tort liability statute." *Id.* As Plaintiffs correctly point out, however, the MCA is unquestionably not a worker's compensation statute, since claimants need not be federal or military employees to receive a recovery under the MCA. Pls' Supp. Mem. in Opp'n to Defs' Mot. to Dismiss [doc. # 34], at 2. The payments to other victims of the Bosnia crash confirms this. Additionally, the Supreme Court has stated that FECA's exclusivity provision "was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity." *Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 193–94, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983). Yet the MCA does not waive the government's sovereign immunity, and the Air Force does not contend otherwise. *See, e.g., Schneider,* 27 F.3d at 1333 (finding that "the government has not waived sovereign immunity for tort claims against the government that arise in a foreign country" and that Plaintiffs "have no cause of action against the government, and as a result, preclusion of judicial review by the Military Claims Act does not deprive them of a cause of action," thus indicating that the MCA itself does not waive sovereign immunity).

There appears to be no reason in the language of FECA why eligibility for FECA benefits should disqualify an otherwise qualified claimant for payment of benefits under the MCA. Therefore, to the extent that the Air Force believes that it is *required* by FECA exclusivity to deny Plaintiffs' claims, the Court respectfully suggests that the Air Force is wrong. Nevertheless, despite the Court's misgivings about the Air Force's interpretation of FECA's exclusivity provision, there is

---

**12.** The regulations promulgated by the Air Force in this case have the status of interpretive, rather than legislative, rules under the Administrative Procedure Act, in that they were *not promulgated pursuant to notice-and-*comment rulemaking procedures. *See Sweet v. Sheahan,* 235 F.3d 80, 90 (2d Cir.2000). Under the Supreme Court's decision in *United States v. Mead Corp.,* 533 U.S. 218, 234–35, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), interpretive rules such as these do not qualify for *Chevron* deference, but instead receive a lesser deference under the test set forth in *Skid-more v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944). Under *Skidmore,* "[t]he weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." (quoted in *Mead,* 533 U.S. at 228, 121 S.Ct. 2164). Applying *Skidmore* review, the Court finds the Air Force's interpretation of FECA unpersuasive.

nothing in the MCA that prohibits the Air Force from making the policy choice to deny MCA benefits to claimants who are also eligible for FECA benefits.

Because the Air Force's decision to deny MCA benefits to any claimant who is eligible for FECA benefits does not contravene any clear statutory mandate in the MCA, there is no basis for this Court to set aside either the regulation or Defendants' decision to deny Plaintiffs' claims. Perhaps the Air Force will be willing in light of this decision to revisit this issue and even formally seek the guidance of the Department of Labor regarding its view on whether the FECA exclusivity provision bars recovery under the MCA. Absent reconsideration by the Air Force, Plaintiffs' only recourse is to Congress itself.

In view of the suffering of the families in this case, the Court's conclusion that it cannot come to their aid (even when the Air Force may be mistaken) will undoubtedly strike some as insensitive or downright unfair. But however sympathetic Plaintiffs' plight may be, the Judiciary remains a branch of limited powers. And when, as here, a court is faced with statutory language that limits its jurisdiction and grants broad discretion to an executive agency, the court is duty-bound to defer to, and respect, Congress's choice.

## VI.

Defendants' Motion to Dismiss [doc. #10] is GRANTED. The case is dismissed and the Clerk is directed to close the file.

IT IS SO ORDERED.